A08A2246. HAMILTON-KING et al. v. HNTB GEORGIA, INC. et al.
(676 SE2d 287)

PHIPPS, Judge.

Lakeisha Nicole Hamilton-King and her two brothers were injured when the car in which they were traveling became disabled, and they then exited the car and were hit by a van. The collision occurred on a bridge over the Little Satilla River where a bridge-widening project was ongoing. Hamilton-King, individually and as administratrix of the estate of Johnny Hamilton, Jr., and Justin Hamilton brought this negligence action against HNTB Georgia, Inc., the designer of certain aspects of the bridge-widening project, and Plant Improvement Company, Inc. d/b/a Seaboard Construction Company, the general contractor on the project.

HNTB and Seaboard filed motions to exclude the Hamiltons' expert witness, Jerome Thomas, and motions for summary judgment. The trial court granted the motions to exclude Thomas's testimony. The court then determined that the negligence claims could not be established without expert testimony and therefore granted both motions for summary judgment. The Hamiltons appeal the grant of all four motions. Because we conclude that the trial court abused its discretion by excluding Thomas's testimony, which was the sole basis for granting the summary judgment motions, we reverse.

Plant Improvement Company contracted with the Georgia Department of Transportation (DOT)[1] to perform construction work along Interstate 95, including the Little Satilla bridge. Seaboard, a division of Plant Improvement Company, was the primary contractor on the project. Seaboard developed the traffic control plan and was responsible for traffic control during the entire project. HNTB, an architecture engineering firm, contracted with Seaboard to provide design services for the project. HNTB provided conceptual plans for traffic control, and both HNTB and Seaboard had input into the contents of the traffic control plan.

The collision occurred on April 8, 2003, at approximately 10:00 p.m. While Hamilton-King was driving across the bridge, a car

---

[1] Hamilton-King also sued the DOT, but voluntarily dismissed it from the suit.

drifted into her lane. As she moved over to avoid it and then moved back, she hit a barrier on the left-hand side of the road, and then traveled across and hit the barrier on the right-hand side of the road. Her car then spun around so that it was facing oncoming traffic, stopped, and would not re-start. Hamilton-King and her two brothers got out of the car and stood behind it, waving for someone to stop and help. There was nowhere to stand other than in a travel lane and it was too dark to see how far the bridge extended.

An off-duty police officer saw the three individuals standing behind a car. He parked his car, grabbed a flashlight and two reflective vests, and ran back to them. The officer and one of Hamilton-King's brothers took the vests and walked ahead to warn oncoming traffic. An oncoming van clipped the officer on the side and then struck Hamilton-King's stopped car. Hamilton-King and her brothers were hit by the van or by Hamilton-King's car after it was hit by the van. Johnny Hamilton, Jr., was killed and Hamilton-King and Justin Hamilton were injured.

After reviewing documents and photographs related to the collision, various contract documents, manuals on design and traffic control, and numerous other documents, Thomas, an experienced civil engineer, opined that there were deficiencies in the construction zone where the collision occurred because no shoulders were provided on the 900-foot bridge to allow safe refuge in emergency situations; no lighting was provided for motorists traveling through the construction zone at night and, in general, safety appeared to be a lower priority than completing the work. In his opinion, the collision probably would not have occurred had shoulders or lighting been provided as part of the design process. Thomas also offered other opinions: the speed limit on the bridge was too high, given the lack of shoulders; the right-hand rail of the bridge should have had reflectors on it; the signage was inadequate; and Seaboard failed to adequately check traffic control effectiveness and safety at night.

Seaboard and HNTB moved to exclude Thomas's expert witness testimony, claiming that he was not qualified to offer an opinion regarding the traffic control plans. They asserted that Thomas lacked experience in designing or reviewing traffic control plans for bridges or other construction sites and that his opinions were unreliable because they could not be tested and were not based on industry standards or publications.

The trial court determined that Thomas's education and work experience provided him with sufficient skills to understand and interpret manuals and related materials relevant to the standard of care for designers of traffic control measures, thereby making him "at least marginally qualified to testify as an expert on traffic control measures on highway construction sites." The trial court then

YALE LAW LIBRARY

determined that Thomas's use of engineering judgment, as contemplated by the Manual of Uniform Traffic Control Devices (MUTCD), was inadequate to support his opinion that the bridge configuration violated the standard of care applicable to such projects because the site met the MUTCD's minimum standards. Because Thomas did not provide evidence of similar accidents, the trial court decided that Thomas's opinion had not been properly tested. The trial court also found that the documents upon which Thomas had relied did not show that his opinions regarding the lack of shoulders and lighting on the bridge had been generally accepted. Ultimately, the trial court concluded that

> the opinions of Mr. Thomas, which he concedes to be products of his exercise of "engineering judgment" and which, under the evidence presented, cannot be validated against accepted standards, tested, or reviewed, are not reliable, as that term is used in OCGA § 24-9-67.1 (b) (2) and (3), and they are therefore inadmissible.

1. The Hamiltons argue that the trial court abused its discretion by granting the motions to exclude Thomas's expert testimony.[2] Despite the trial court's enthusiastic embrace of its "gatekeeper" role, we agree.

In civil cases,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial[3]; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case.[4]

---

[2] See *Woodland Partners Ltd. Partnership v. Dept. of Transp.*, 286 Ga. App. 546 (1) (a) (650 SE2d 277) (2007) (trial court's determination on qualification of expert witness reviewed for abuse of discretion).

[3] The phrase "which are or will be admitted into evidence at the hearing or trial" was called into question by *Mason v. Home Depot, U. S. A.*, 283 Ga. 271, 275-276 (2) (658 SE2d 603) (2008).

[4] OCGA § 24-9-67.1 (b).

As noted by the trial court, expert testimony would assist the trier of fact in determining whether HNTB and/or Seaboard were negligent in designing, implementing, or maintaining the traffic control plan for this project. "The possession of special knowledge in a field derived from experience, study, or both makes one an expert."[5]

Thomas's educational qualifications include civil engineering degrees from Rensselaer Polytechnic Institute (M.S.) and the University of Notre Dame (B.S.). In his work on this case, he studied relevant portions of Georgia DOT design and traffic control manuals and the MUTCD, published by the Federal Highway Administration. Thomas's experience as a licensed professional engineer includes over 30 years of senior management experience in the planning, programming, budgeting, and control of operations and maintenance programs and facilities related to highway and bridge infrastructures. His overall engineering and management experience as a licensed professional engineer spans 48 years and includes planning, design, construction, operations, and maintenance. Thomas served for over 30 years with the New York State Department of Transportation in several different positions, including director of the Highway Maintenance Division and assistant commissioner for the Office of Operations, which included the Departments of Highway & Bridge Maintenance, Waterways Management, Equipment Management, and Traffic Engineering & Safety. After retiring from the New York Department of Transportation, he went to Boston to work on the "Big Dig" project, where he reviewed design plans to anticipate future maintenance needs.

Given Thomas's experience and study, he was qualified to give an opinion about traffic control devices on this construction project.[6] We now look at the basis for Thomas's opinions.

Although the trial court focused heavily on the fact that Thomas did not point to a specific provision in the MUTCD that required the exact safety measures he proposed, "in some cases, 'the relevant reliability concerns may focus upon personal knowledge or experience.' "[7] Thomas based his opinions on the use of his engineering judgment, and § 1A-4 of the MUTCD specifically states that "while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering

---

[5] *Ga. Dept. of Transp. v. Baldwin*, 292 Ga. App. 816, 818 (2) (665 SE2d 898) (2008) (citation and punctuation omitted).

[6] See *Woodland*, supra at 547 (1) (a).

[7] *Brady v. Elevator Specialists*, 287 Ga. App. 304, 306-307 (1) (653 SE2d 59) (2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U. S. 137 (119 SC 1167, 143 LE2d 238) (1999)).

YALE LAW LIBRARY

judgment."[8] Moreover, the MUTCD is not "the exclusive source of engineering and design standards."[9]

OCGA § 24-9-67.1 (f) provides that, in interpreting OCGA § 24-9-67.1, the courts may draw from the opinions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*[10] and *Kumho Tire Co. v. Carmichael*.[11] The trial court apparently interpreted this provision to mean that an expert's opinions are not admissible under Georgia law unless they meet the factors used by the Supreme Court in *Daubert* to consider whether scientific evidence is admissible, specifically whether the theory or technique can be and has been tested, whether the theory or technique has been subjected to peer review and publication, the potential rate of error, and general acceptance in the relevant scientific community.[12] But the Supreme Court of Georgia has interpreted that language from OCGA § 24-9-67.1 (f) as merely a permissive suggestion that courts consider federal interpretations of cases on which the federal rules and OCGA § 24-9-67.1 were based, noting that it "contains no words of command."[13]

And *Daubert* and *Kumho Tire* recognize that the inquiry into an expert's credentials cannot be based on a rigid set of factors. In *Daubert*, the United States Supreme Court emphasized that the inquiry envisioned by the federal rule on expert testimony is flexible.[14] In *Kumho Tire*, the Supreme Court determined that while the *Daubert* factors may bear on a judge's determination regarding the admissibility of an engineering expert's testimony, those factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[15]

The trial court determined that Thomas's opinions could not be validated because he failed to show "a series of similar accidents" on Interstate 95 that would constitute test results. But we cannot require evidence of numerous fatal car accidents on this highway before allowing an expert to testify about safety measures that could have been implemented to prevent the first such injury. The court also faulted Thomas for failing to show how to ascertain error rates

---

[8] *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 351 (3) (568 SE2d 559) (2002) (punctuation omitted).

[9] *Dept. of Transp. v. Brown*, 267 Ga. 6, 8 (2) (471 SE2d 849) (1996).

[10] 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993).

[11] Supra.

[12] *Daubert*, supra at 593-595.

[13] *Mason*, supra at 277 (3).

[14] *Daubert*, supra at 594.

[15] *Kumho Tire*, supra at 149-150.

in his use of engineering judgment. We do not find this "failure" sufficient to exclude Thomas's testimony.

" '[D]isputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility.' "[16] "The weight given to expert testimony in negligence cases is for the trier of fact who can, but is not required to give it controlling influence."[17]

2. The Hamiltons contend that the trial court erred in granting the motions for summary judgment of HNTB and Seaboard. The trial court granted the motions based on its determination that, without expert testimony, the Hamiltons would be unable to establish negligence by the defendants. Given our conclusion in Division 1 that the Hamiltons' expert should not have been excluded, summary judgment is no longer authorized.[18]

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 23, 2009 — 

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney, Clark & Williams, Nathan T. Williams,* for appellants.

*Brown, Readdick, Bumgartner & Carter, Richard A. Brown, Carlock, Copeland & Stair, Gregory H. Wheeler,* for appellees.

---

[16] *Agri-Cycle LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008) (citing *Daubert,* supra, and *Cotten v. Phillips*, 280 Ga. App. 280, 286 (633 SE2d 655) (2006)).

[17] *Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (1) (632 SE2d 135) (2006) (citations and punctuation omitted).

[18] See generally id. at 850 (1) (opinion evidence adduced by the respondent is sufficient to preclude the grant of summary judgment).