A09A1031. GEORGIA DEPARTMENT OF TRANSPORTATION
v. MILLER et al.
(686 SE2d 455)

DOYLE, Judge.

Following a jury trial, the Georgia Department of Transportation ("DOT") appeals from a verdict in favor of plaintiffs Richard Miller (as administrator of the estate of Johnny Miller) and Linda Miller (Johnny Miller's surviving spouse), based on their claims arising from

---

the death of Johnny Miller in a single-car crash on a wet roadway. Specifically, DOT asserts as error (1) the denial of DOT's motion for a directed verdict based on the Georgia Tort Claims Act[1] ("GTCA"), (2) the admission of testimony from three expert witnesses, (3) the admission of evidence in violation of the parties' pretrial stipulation, (4) the trial court's failure to give certain jury charges, and (5) the giving of a jury instruction defining when a body of water is considered "permanent." For the reasons that follow, we affirm.

On appeal following a jury verdict in a civil case, we examine the record in the light most favorable to the verdict and judgment.[2] So viewed, the evidence shows that Johnny Miller was killed in a single-car crash after his car hydroplaned on a wet road and landed submerged in a roadside pond, where he drowned. Due to debris blocking a drainage culvert, accumulated rainwater from the pond covered the road. The jury found that DOT failed to properly keep the culvert clear of debris, which caused water to run over the road where Miller lost control of his vehicle and died. After reducing the jury's verdict pursuant to OCGA § 50-21-29, the trial court entered a judgment in favor of Linda Miller in the amount of $1 million and in favor of Richard Miller in the amount of $507,921.90. DOT now appeals.

1. DOT contends that the trial court erroneously denied its motion for a directed verdict because DOT's negligence occurred in the performance of a discretionary function by a state employee, which is not subject to the waiver of sovereign immunity under the GTCA. We disagree.

The GTCA generally provides that

> [t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth [in the Act].[3]

OCGA § 50-21-24 (2) sets forth an exception if the alleged tort is committed during "[t]he exercise or performance of or the failure to exercise or perform a *discretionary function or duty on the part of a state officer or employee*, whether or not the discretion involved is

---

[1] OCGA § 50-21-24 (2).

[2] See *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007).

[3] OCGA § 50-21-23 (a).

abused."[4] The Act defines "[d]iscretionary function or duty" as "a function or duty requiring a state officer or employee to exercise his or her *policy judgment* in choosing among alternate courses of action *based upon a consideration of social, political, or economic factors.*"[5]

At trial, based on the language in the GTCA, DOT moved for a partial directed verdict with respect to DOT's alleged failure to comply with a storm patrol policy, on the ground that such a failure stemmed from the performance of (or failure to perform) a discretionary function by a state employee. DOT focused on testimony by plaintiffs' expert that DOT's Drainage Maintenance Manual stated, e.g., that "after each major storm, inspection should be performed to evaluate the need for clean up and repair. . . . Culverts must be kept free of obstructions."

DOT elicited testimony to the effect that, in practice, when implementing this policy, DOT personnel could make a "judgment call" as to which areas to inspect, and the policy afforded crews discretion as to whether to inspect after a particular storm. Based on this and other similar testimony from DOT employees, DOT argued that the trial court should have directed a verdict that the practices in the storm policy were discretionary and therefore not subject to sovereign immunity waiver in OCGA § 50-21-24 (2).

However, the "judgment call" relied upon by DOT here is not the type of discretionary function contemplated by OCGA § 50-21-24 (2). As noted above, the GTCA defines "discretionary function or duty" as a function or duty requiring a state officer or employee to exercise his or her *policy judgment* in choosing among alternate courses of action based upon a consideration of social, political, or economic factors.[6] The Supreme Court of Georgia has emphasized that these factors are only intended to signal "basic governmental policy decisions," and are not to be construed overly broadly: "Whether to buy copier paper from a particular vendor, and in which colors, are decisions that might be affected by all three factors, but they are not policy decisions."[7]

Similarly, in the scenario here, the day-to-day operational decision of whether and where to send out DOT personnel to inspect for road hazards on the day in question was not a basic governmental policy decision for purposes of the GTCA.[8] For example, in *Dept. of*

---

[4] (Emphasis supplied.)

[5] (Emphasis supplied.) OCGA § 50-21-22 (2).

[6] See *Bruton v. Dept. of Human Resources*, 235 Ga. App. 291, 294 (509 SE2d 363) (1998).

[7] (Punctuation omitted.) *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 680 (523 SE2d 571) (1999).

[8] Compare *Lewis v. Ga. Dept. of Human Resources*, 255 Ga. App. 805, 810-811 (567 SE2d 65) (2002) (holding that exercising judgment in whether to bring a regulatory enforcement

*Transp. v. Brown*,[9] we explained that the initial decision to extend a highway is a policy matter within the discretionary function exclusion, but we held that DOT's decision to open the road prior to completion with an alternative traffic control system that relied on two-way stop signs rather than on four-way traffic light signals was not a policy decision.[10] Noting that this decision was a "design and operational" decision, not a policy decision, the Supreme Court of Georgia approved of this characterization.[11] Similarly, here, DOT's decision of when and where to inspect for road hazards during and following a rain event was not a policy decision requiring the exercise of discretion within the scope of OCGA § 50-21-24 (2). Therefore, this enumeration is without merit.

2. DOT next enumerates as error the admission of expert testimony from three expert witnesses. "The question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion."[12]

(a) *Herman Hill.* DOT contends that the trial court erred in admitting testimony from Herman Hill (1) that DOT failed to complete a routine biennial inspection of the drainage culvert and weekly inspections of the roadway and (2) that DOT failed to comply with its storm control policy. We disagree.

First, with respect to the inspections, DOT's appellate argument focuses on the content of Hill's testimony and essentially disputes the factual assertions made by Hill. DOT does not demonstrate how Hill failed to qualify as an expert under OCGA § 24-9-67.1 (b), which provides, in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The

---

action was a "discretionary function" within the scope of the GTCA).

[9] 218 Ga. App. 178 (460 SE2d 812) (1995), aff'd, *Dept. of Transp. v. Brown*, 267 Ga. 6 (471 SE2d 849) (1996).

[10] See id. at 181-182 (2).

[11] See *Brown*, 267 Ga. at 7 (1).

[12] (Punctuation omitted.) *Moran v. Kia Motors America*, 276 Ga. App. 96, 97 (1) (622 SE2d 439) (2005).

witness has applied the principles and methods reliably to the facts of the case.

Hill's qualifications were presented to the trial court, including his advanced degrees in civil engineering and public administration, professional engineer's license, certification as a professional traffic operations engineer, fifteen years experience working at DOT, and eight years experience at the local government level. Hill testified based on his personal knowledge of DOT's manuals and inspection policies. DOT's argument essentially disputes Hill's interpretation of DOT inspection policies, but DOT failed to show how the trial court abused its discretion in allowing Hill to testify as an expert. Thus, DOT's challenge to Hill's conclusions goes to the weight of his testimony, not the admissibility.[13]

Further, with respect to Hill's testimony about DOT's storm control policy, DOT challenged Hill's experience with the policy, eliciting testimony that he had not personally performed an inspection. Hill explained, however, that he had personally "reviewed hundreds and hundreds of them" and evaluated them based on other information relevant to the inspections. Essentially, this challenge impacted the weight of Hill's testimony, not the admissibility.

> [I]f the expert's opinion was based upon inadequate knowledge, this does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. If it be developed that the opinion is based on inadequate knowledge, this goes to the credibility of the witness rather than to the admissibility of the evidence. The weight given to expert testimony in negligence cases is for the trier of fact who can, but is not required to give it controlling influence.[14]

Because Hill's qualifications themselves were not impeached and Hill's testimony was based on his specialized knowledge of DOT policies and procedures, which would "assist the trier of fact . . . to

---

[13] See *Vaughn v. State*, 282 Ga. 99, 101 (2) (646 SE2d 212) (2007) (dispute over interpretation of test results was subject to cross-examination, and disputes as to opinion go to weight and not admissibility of expert opinion); *Abramson v. Williams*, 281 Ga. App. 617, 619 (636 SE2d 765) (2006) ("under *Daubert*[ *v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993)], disputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility") (punctuation omitted).

[14] (Citations and punctuation omitted.) *Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (1) (632 SE2d 135) (2006).

understand the evidence,"[15] we discern no abuse of the trial court's discretion in allowing Hill's challenged testimony.

(b) *Julian Beaver*. DOT also challenges the trial court's admission of testimony from Julian Beaver, an accident reconstruction expert, who gave his opinion that Miller's vehicle veered into the roadside pond as a result of hydroplaning on excessive water on the roadway. DOT contends that Beaver's testimony was overly speculative and conclusory. However, the trial transcript demonstrates that Beaver's testimony was based on his personal investigation of the site, his own measurements and photographs, a review of other photographs and video taken at the scene on the morning Miller was discovered, a survey, and depositions of other investigators and witnesses.

> [T]he appropriate standard for assessing the admissibility of the opinion of [an] expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so. An expert is not required to prove within a reasonable degree of scientific certainty his opinion of how an accident occurred.[16]

Therefore, in light of the investigation by the witness and the factual basis for his conclusion, the trial court did not abuse its discretion in allowing the opinion testimony from the witness.

(c) *Edward Hajduk*. DOT also challenges the admissibility of trial testimony by Edward Hajduk, a geotechnical engineer, who testified that the road embankment had served as an earthen dam holding water for a long period of time within a certain height range. To support his opinion, Hajduk analyzed soil samples taken both by DOT and under his independent direction. Based on his analysis of the samples, he concluded that ponded water had been standing against the roadside embankment for five to ten years prior to Miller's death.

DOT argues that Hajduk's methodology was fatally flawed because he conceded that he had never applied his analysis to a roadway embankment acting as an earthen dam, and it had not been tested, peer reviewed, or generally accepted in the scientific community. However, Hajduk's testimony was not inadmissible under OCGA § 24-9-67.1, because Hajduk explained that he used accepted, standard methods and analysis applicable to the flow of water through clay soil, and the work he did in connection with the case was routinely done in his profession. The expert also discounted at

---

[15] OCGA § 24-9-67.1 (b).
[16] (Punctuation omitted.) *Layfield*, 280 Ga. at 850 (1).

least one alternative theory by explaining how the observed conditions in the soil samples were inconsistent with that theory.

This Court has stated that the trial court's inquiry under OCGA § 24-9-67.1 as to an expert's credentials "cannot be based on a rigid set of factors," and factors such as "whether the theory or technique can be and has been tested, whether the theory or technique has been subjected to peer review and publication, the potential rate of error, and general acceptance in the relevant scientific community" are suggestive and not matters of strict, narrow application in each case.[17] Based on the witness's explanation of his methodologies, including his basis for discounting alternative theories, we discern no abuse of the trial court's discretion in admitting Hajduk's trial testimony.

3. DOT contends that the trial court erred in failing to enforce the following stipulation entered into by the parties: "The parties agree that the Plaintiffs will not attempt to offer testimony referring to the location of Mr. Miller's death as the "Beaver Pond" or "Beaver Dam" by either Bucky Beaver, Herman Hill, Dr. Tom Debo, or Pamela Knox. . . ." We discern no basis for reversal.

During Herman Hill's testimony, the Millers posed a hypothetical question to Hill seeking his opinion about DOT's performance assuming certain conditions. The hypothetical did not refer to the blocked culvert as a beaver dam, but Hill's response referred to DOT's failure to "control that beaver activity" and failure to control "beaver dams and that sort of thing." DOT objected, and during a conference outside the presence of the jury, the trial court ruled that the hypothetical and response would be stricken, and again over DOT's objection, the trial court interpreted the stipulation to allow a new hypothetical based on an assumption that the culvert was blocked by beaver activity. The trial court then resumed proceedings and instructed the jury to "disregard what you've heard before," without noting what the objection was or identifying the problem with the hypothetical. The Millers then sought Hill's opinion as to DOT's conduct, assuming hypothetically that beaver activity blocked the culvert.

DOT now argues that the trial court abused its discretion in allowing this question over its objection and in light of the stipulation. However, as argued by the Millers at trial, the hypothetical was based on prior uncontested evidence that the culvert was blocked by beaver activity, and Hill himself was not requested to opine on

---

[17] *Hamilton-King v. HNTB Ga., Inc.*, 296 Ga. App. 864, 868 (1) (676 SE2d 287) (2009) (finding abuse of discretion where trial court excluded expert testimony based on mistaken belief that strict application of such factors was mandatory).

whether beaver activity actually caused the blockage in the roadside culvert. As explained in DOT's appellate brief, Hill's knowledge of the cause of the blockage would be based on hearsay, so DOT sought the stipulation to avoid Hill's hearsay declaration that the blockage was caused by beaver activity. Based on the scenario presented at trial, we find no abuse of the trial court's discretion in permitting Hill to respond to a hypothetical question in which beaver activity was assumed, because competent evidence of beaver activity had already been admitted,[18] and Hill himself was therefore not testifying as to the truth of that assertion. Further, any error would have been harmless because other witnesses not subject to the stipulation testified based on their personal knowledge that the area had been a beaver pond or beaver dam for years.[19] Accordingly, this enumeration affords no basis for reversal.

4. DOT next contends that the trial court erred in refusing to give certain requested jury charges. We disagree.

(a) DOT's first requested charge was as follows:

> The mere fact that an automobile wreck happened and the plaintiffs may have sustained injuries or damages affords no basis for recovery against defendant unless the plaintiffs carry the burden of proof and show[ ] that such automobile wreck and damages were caused by specific acts of negligence on the part of the defendant.

> In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge. [Further,] the mere fact that a requested charge was taken from an opinion of our appellate courts does not render its use appropriate in charging the jury.[20]

Here, the trial court did not err in declining to give the requested charge, because the court otherwise properly instructed the jury on the plaintiffs' burden of proof, on the concepts of negligence and causation, and on the proposition that "if you find no negligence at

---

[18] See *Ga. Dept. of Transp. v. Baldwin*, 292 Ga. App. 816, 820 (4) (665 SE2d 898) (2008) ("an expert may answer a hypothetical question when the question is based on assumed facts placed in evidence").

[19] See *Smith v. Stacey*, 281 Ga. 601, 601-602 (1) (642 SE2d 28) (2007) ("The admission of hearsay testimony is harmless when it is cumulative of legally admissible evidence showing the same fact.").

[20] (Citation and punctuation omitted.) *Salvador v. Coppinger*, 198 Ga. App. 386, 388 (1) (b) (401 SE2d 590) (1991).

all on the part of defendant Department of Transportation then the plaintiff[s'] case against the defendant ends."

> Even though a request to charge may be apt, correct and pertinent, it is not necessarily error to fail to charge it. We must look to the charge as a whole to determine whether the court substantially covered the principles embodied therein or whether it was sufficiently or substantially covered by the general charge.[21]

So viewing the charge, we discern no error.

(b) DOT next assigns as error the refusal to give the following requested charge:

> Proximate causation cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. You may not return a verdict for Plaintiffs unless you find that Plaintiffs' evidence affords a reasonable basis for you to conclude that it is more likely than not that the conduct of the DOT was a cause in fact of their injuries. A mere possibility of such causation is not enough. When the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, a verdict for the Defendant is required.

We discern no error because this instruction was substantially covered by the trial court's proper instructions on the plaintiffs' burden of proof, on the meaning of the preponderance of the evidence, on the proposition that "[i]f you find that the evidence is evenly balanced on any issue in this case, it would then be your duty to resolve that issue against the party having the burden of proving that issue," and on proximate as opposed to "remote" causation.[22] "It is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case. All that is necessary, provided the requested charge accurately states the relevant principles of law, is that these principles be fairly given to the jury in the general charge."[23]

---

[21] (Punctuation and footnote omitted.) *Mortensen v. Fowler-Flemister Concrete*, 252 Ga. App. 395, 397 (2) (555 SE2d 492) (2001).

[22] See id.

[23] (Punctuation omitted.) *Baxter v. Wakefield*, 259 Ga. App. 475, 478 (2) (577 SE2d 804) (2003).

(c) DOT also asserts as error the refusal to give an instruction on causation that included the following language:

> A man's responsibility for his negligence must end somewhere. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A defendant is not required to presume the negligence or sudden emergency of another.

The first sentence is argumentative and therefore not properly included in a jury charge.[24] The remaining portions are argumentative in part and were otherwise substantially covered by the trial court's proper charges on the burden of proof, negligence, causation, comparative negligence, and the decedent's duty to exercise ordinary care to avoid the consequences of DOT's negligence. Therefore, this enumeration is without merit.[25]

(d) DOT contends the trial court erred in refusing to give the following requested charge:

> No person shall drive a vehicle at a speed greater than is reasonable and careful under the conditions and having regard for the actual and potential hazards then existing. Consistently with the foregoing, every person shall drive at a reasonable and prudent speed when special hazards exist with respect to other traffic or by reason of weather or highway conditions.

However, because the legal principles in this charge were substantially covered by the trial court's proper instruction on the decedent's duty to exercise ordinary care to avoid the consequences of DOT's negligence, on the proposition that "a driver shall exercise due care in operating a motor vehicle on the highways of this state," on assumption of risk, and on comparative negligence, we discern no error.[26]

---

[24] See *Haughton v. Canning*, 287 Ga. App. 28, 32 (4) (a) (650 SE2d 718) (2007) (a jury charge "must not be argumentative or seek an expression of opinion on the part of the court"). See also *Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 446-447 (2) (451 SE2d 87) (1994) ("Language which would be proper in a headnote or in the opinion by a reviewing court may be improper when embodied in a charge to a jury.") (punctuation omitted).

[25] See *Mortensen*, 252 Ga. App. at 397 (2).

[26] See *Baxter*, 259 Ga. App. at 478 (2); *Mortensen*, 252 Ga. App. at 397 (2).

(e) DOT lastly contends that the trial court erred in refusing to give the following charge:

> Before the Plaintiff can recover from the [DOT], the Plaintiff must prove that there existed maintenance standards required to be followed by the [DOT] and that the maintenance standards in existence were not followed by the [DOT]. In other words, if there existed a maintenance standard by [DOT] for the maintenance of [the road in question] and [DOT] substantially complied with the maintenance of the highway, then the DOT cannot be liable for damages resulting from any deviation of the maintenance of the highway.
>
> For you to find the GDOT liable for any losses that Plaintiffs claim arise from improper maintenance of [the road], Plaintiffs must prove that a maintenance standard existed at the time of the automobile wreck involving Mr. Miller and that the DOT failed to substantially comply with maintenance standards as in existence at the time of the accident. Without such evidence of a maintenance standard and a deviation therefrom, there can be no liability on the part of the DOT for damages arising from the maintenance of the highway or right of way.

The nonargumentative legal concepts in this instruction were substantially covered by the trial court's instructions (i) defining ordinary negligence; (ii) that "the plaintiff must prove that the defendant was negligent in one or more ways alleged in order to recover"; (iii) that "[b]efore a plaintiff can recover damages from a defendant in a case such as this, there must be injury to the plaintiff resulting from the defendant's negligence"; (iv) describing DOT's duty to maintain public highways; and (v) that a

> violation of any standard, guideline, or procedure accepted by [DOT] as authoritative, such as its own standards and guidelines, or any other engineering standards or guidelines that it accepts as establishing the minimum standard of care, may be considered by you as evidence of negligence of the [DOT].

Accordingly, this enumeration fails.[27]

5. In its final enumeration, DOT contends that the trial court

---

[27] See *Baxter*, 259 Ga. App. at 478 (2).

erred in giving a charge requested by the Millers defining the word "permanent," which DOT argues was irrelevant to the issues to be determined at trial. At trial, however, DOT contested the persistence and level of ponded water by the road, and the permanence of such a pond would be relevant to DOT's notice of the potential hazards associated with the water. Moreover, "[a]n inapplicable jury instruction is not grounds for reversal where it does not appear that the inapplicable part was calculated to mislead the jury, erroneously affected the verdict or was prejudicial to the rights of the complaining party," because it did not inject issues outside the pleadings or evidence.[28] Thus, to the extent the instruction was inapplicable, we conclude that its inclusion in the jury charge is not grounds for reversal because such an isolated definition did not erroneously affect the verdict or otherwise prejudice DOT.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 10, 2009.

*Thurbert E. Baker, Attorney General, Davis, Pickren & Seydel, Paul R. Jordan, Donald P. Boyle, Jr., William G. Bertram*, for appellant.

*Pasley & Nuce, Derek C. Nuce, O'Neal, Brown & Clark, Manley F. Brown, John C. Clark, Walker, Hulbert, Gray & Byrd, Charles W. Byrd, Charles M. Cork III*, for appellees.

---

[28] (Punctuation omitted.) *Roberts v. Stennett*, 201 Ga. App. 155, 156 (2) (410 SE2d 356) (1991).