**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 18, 2013**

# In the Court of Appeals of Georgia

A13A1620. ANDERSON et al. v. ATLANTA GAS LIGHT COMPANY.     JE-080

A13A1621. ANDERSON et al. v. TINKER.     JE-081

ELLINGTON, Presiding Judge.

In these related personal injury cases, which arose when a mobile home exploded as a result of accumulated natural gas, Shan Eric Anderson,[1] Jason Hunter, and David Cadieux (hereinafter, "the plaintiffs") sued the Atlanta Gas Light Company ("AGLC") and Hunter's landlord, Charles Tinker d/b/a Tinker Mobile Home Park ("Tinker") (collectively, "the defendants"). In both of the above-styled cases, the plaintiffs appeal from the trial court's grant of the defendants' motions to exclude the testimony of their expert witness. In addition, in Case No. A13A1620, the plaintiffs

---

[1] Anderson is acting in his capacity as Administrator for the Estate of Joshua Ryan Anderson.

appeal the court's grant of summary judgment to AGLC on their complaints. For the reasons explained below, we affirm.

The record shows the following undisputed, relevant facts. Tinker is the owner and operator of a mobile home park in Trenton. At the time of the incident at issue, three of the homes, including the home leased by plaintiffs Jason Hunter and David Cadieux, were served by natural gas lines that were installed by AGLC. A master meter regulated the flow of gas through the lines. The master meter was located on Tinker's property and was not locked or monitored to prevent unauthorized individuals from turning the natural gas on or off.

On the evening of September 30, 2003, a resident of Tinker's mobile home park turned on the master meter in order to provide natural gas for an appliance in his home.[2] Later that evening, Hunter and Cadieux entered their home while accompanied by a friend, Joshua Anderson. Shortly thereafter, Anderson lit a cigarette, which ignited natural gas that had accumulated in the home without the

---

[2] The resident is not a party to the instant appeals.

In addition, there is no evidence that AGLC had any knowledge that someone had stopped the flow of gas to Tinker's residents by turning the master meter off prior to the day of the explosion or that the resident turned the gas back on that day.

plaintiffs' knowledge. The resulting explosion destroyed the home and severely injured the plaintiffs.

The plaintiffs later discovered that, a few months before the explosion, Tinker had turned off the natural gas supply at the master meter so that his employees could install an electric central heating and air conditioning system in Hunter's and Cadieux's home. The employees did not cap the gas pipeline that serviced the home, nor did they shut off the pipeline's service valve that was under the home's floor. As a result, when the gas was turned on at the master meter on September 30, natural gas began to flow into and accumulate in the home.

The plaintiffs sued AGLC, alleging, inter alia, that it had negligently "failed to lock or otherwise secure the master meter when the downstream users [(the park's residents)] did not require gas or when the meter was shut off[, causing] the master meter to be accessible to the general public," "failed to exercise ordinary care in the installation, maintenance, operation, inspection and control of the gas supply system it installed for Tinker, and negligently failed to warn the public or [the plaintiffs] of the dangerous condition of the natural gas system on Tinker's property." The plaintiffs also asserted that, because the master meter was unlocked and had no

3

warning sticker, it was a dangerous condition[3] that constituted a nuisance, and that, because AGLC failed to train or supervise Tinker in the operation of the master meter, or to warn him of the dangers of the gas system, AGLC was liable for negligent entrustment. According to the complaint, AGLC's violation of its "own policies and procedures, federal and state law and regulations, and industry standards" constituted negligence per se.[4]

The plaintiffs also sued Tinker for, inter alia, negligence and negligence per se, alleging that he "fail[ed] to exercise ordinary care in operating and maintaining the gas system at [his] property and failed to follow . . . laws and regulations applicable to a master meter operator."[5]

In support of their complaints, the plaintiffs offered the affidavit of an expert witness, Douglas Buchan. In his affidavit, Buchan asserted that "[t]he standard of care applicable to [AGLC] requires that [it] establish policies and practices that ensure that

---

[3] There is no evidence that the master meter was defective or malfunctioning on the day of the explosion.

[4] The plaintiffs also asserted claims against AGLC for trespass; vicarious liability for Tinker's negligence (as AGLC's agent); liability pursuant to a joint venture; and strict liability under OCGA § 51-1-11.

[5] The plaintiffs also asserted claims against Tinker for creating and maintaining a nuisance; liability pursuant to a joint venture; and negligent entrustment.

4

a closed meter valve is secured by lock or other acceptable device," and, in his opinion, AGLC breached that standard of care in this case.

AGLC and Tinker filed motions to exclude Buchan's testimony, arguing that the plaintiffs had failed to show that Buchan was qualified as an expert in the specific areas at issue in this case or that his opinions were reliable under OCGA § 24-9-67.1 (b)[6] or the Supreme Court of the United State's decision in *Daubert v. Merrell Dow Pharmaceuticals*.[7] Although the trial court denied the defendants' motions to exclude Buchan's testimony, it subsequently granted their motions for reconsideration, relying upon a recent ruling by the Supreme Court of Georgia in *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641 (697 SE2d 770) (2010). In its orders, the trial court concluded that the plaintiffs had failed to meet their burden of showing that Buchan was qualified to serve as an expert witness in this case and that his opinions were reliable under OCGA § 24-9-67.1 (b) and *Daubert*, pursuant to the standards enunciated by the Supreme Court in *HNTB Ga., Inc. v. Hamilton-King*. The trial court also ruled that,

[6] See footnote 13, infra, regarding the Georgia General Assembly's subsequent adoption of a new Evidence Code.

[7] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993) (identifying certain factors that are relevant in determining the reliability of expert witness testimony).

because the plaintiffs were required to produce expert witness testimony on the applicable standards of care in order to maintain their causes of action against AGLC, and because the plaintiffs produced no expert witness other than Buchan, the exclusion of his testimony required the grant of summary judgment to AGLC on the plaintiffs' complaints.[8] These appeals followed.

*Case Nos. A13A1620 and A13A1621*

1. The plaintiffs contend that the trial court abused its discretion[9] when it excluded Buchan's expert opinion testimony. Specifically, they argue that Buchan is qualified to provide reliable expert testimony about the natural gas industry regulations and standards of care that apply in this case, as well as whether the defendants violated such regulations or breached those standards. They also contend that, because Buchan is qualified to serve as an expert witness, the trial court should admit his testimony and let the jury decide whether the testimony is credible and what

---

[8] The plaintiffs' claims against Tinker remain pending in the trial court.

[9] "The determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. at 642 (1).

6

weight it should give to the testimony. For the following reasons, we find that these arguments lack merit.

(a) The record shows that, during the hearing on the defendants' motions to exclude Buchan's expert opinion testimony, the plaintiffs contended that Buchan's work experience qualified him to serve as an expert in federal pipeline safety regulations and as to whether AGLC breached the applicable standards of care in this case. As far as his relevant experience, they showed that Buchan operated a "small family propane [delivery] business" from 1956 to 1987; that he had been a member, officer, and/or advisor of several state and local business and inflammable gas industry associations; that he had attended several energy-related industry seminars; and that, in the 1990s, he worked for the federal government as a consultant with the Department of Energy and as a liaison between the department and energy companies during efforts to deregulate energy-related industries. The plaintiffs argued that Buchan's opinions about the applicable standards of care and AGLC's alleged breach of those standards were reliable because they were based upon his general knowledge of the natural gas industry and of gas distribution systems.[10]

---

[10] The plaintiffs' counsel also argued that Buchan's testimony as an expert witness was necessary to help the jury understand how the natural gas pipeline system operates, the regulations that apply to companies like AGLC and Tinker, and how

7

In response, the defendants argued that the plaintiffs had failed to demonstrate that Buchan's opinions were sufficiently reliable to be admissible under OCGA § 24-9-67.1 (b) and *Daubert*. They pointed out that, although Buchan asserted that AGLC was negligent when it failed to place a lock or a warning sticker on the master meter that was on Tinker's property, and that AGLC should have trained Tinker to be a master meter operator, Buchan admitted in his deposition that there were no federal pipeline safety regulations that imposed such duties on AGLC. In addition, the defendants noted that an investigation of the explosion by the Georgia Public Service Commission resulted in a finding that there was no evidence that AGLC committed any violations of the applicable pipeline safety regulations. The defendants also argued that Buchan had failed to show that his opinions about the standards of care allegedly breached by AGLC were consistent with the standards of the natural gas industry. Buchan admitted that he did not consult with any natural gas company about its practices, and he did not cite to any data, publication, or industry source to show that AGLC had breached the standards of care in the natural gas industry by failing to install a lock or place a warning sticker on the master meter or by failing to train

AGLC and Tinker violated the applicable standards of care. See Division 2, infra, regarding this argument.

Tinker. Finally, the defendants argued that Buchan's opinions about what he believed AGLC should have done in this case could not be deemed reliable based solely upon his education or experience, because he has no relevant college education, has never worked in the natural gas industry, has never worked for an agency that regulated natural gas utilities or interstate gas pipelines, has never operated a business that was subject to federal pipeline safety regulations or that was regulated by any state's public service commission, has never designed a warning label, has never worked as a master meter operator, and has no first-hand knowledge about what a master meter operator is or is required to do.[11] They argued that, as a result of these deficiencies, Buchan's opinions about the applicable standards of care and the alleged negligence by AGLC constituted inadmissible speculation about what actions he believed AGLC should have taken in this case.

Following the hearing, but before the trial court ruled on the defendants' motions to exclude, the plaintiffs filed a supplemental brief in support of their assertion that Buchan's expert opinion testimony was admissible in this case. They argued that the issues addressed by this Court in *Hamilton-King v. HNTB Ga., Inc.*,

---

[11] In so arguing, the defendants emphasized the major, inherent differences between the nature of propane versus natural gas, as well as how propane gas versus natural gas is transported and delivered to customers.

9

296 Ga. App. 864 (676 SE2d 287) (2009),[12] were on "all-fours" with those presented

in the instant case, that the defendants' arguments regarding the unreliability of

---

[12] In *Hamilton-King v. HNTB Ga., Inc.*, the plaintiffs were injured when they were involved in an automobile collision on a bridge that was undergoing construction. 296 Ga. App. at 864. This Court considered whether the trial court properly excluded the testimony of the plaintiffs' expert witness, who was an experienced civil engineer. Id. at 864-865. The trial court had ruled that, although the witness was qualified to testify as an expert regarding traffic control measures on highway construction sites, the plaintiffs had failed to show that the witness' opinions were reliable under OCGA § 24-9-67.1 (b). Id. at 865-866. Specifically, the trial court ruled that the witness' "use of engineering judgment . . . was inadequate to support his opinion that the bridge configuration violated the standard of care applicable to such projects;" that, because the witness did not provide evidence of similar accidents on the bridge at issue, his opinion had not been properly tested; and that "the documents upon which [the witness] had relied did not show that his opinions regarding the lack of shoulders and lighting on the bridge had been generally accepted." Id. at 865-866. As a result, the trial court concluded that the witness' opinions, which were "products of his exercise of engineering judgment" and which, under the evidence presented, could not be validated against accepted standards, tested, or reviewed, were not reliable under OCGA § 24-9-67.1 (b) (2) and (3), and were, therefore, inadmissible. (Punctuation omitted.) Id. at 866.

On appeal, however, this Court reversed the trial court's ruling, holding that the application of the *Daubert* factors in determining the admissibility of expert testimony is intended to be flexible and that "those factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." (Punctuation and footnote omitted.) Id. at 868 (1). This Court ruled that "[d]isputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility. The weight given to expert testimony in negligence cases is for the trier of fact who can, but is not required to give it controlling influence." (Punctuation and footnotes omitted.) Id. at 869 (1). Consequently, this Court concluded that the trial court had abused its discretion by excluding the witness' testimony. Id.

10

Buchan's opinion testimony are the "exact same argument[s] that the Court of Appeals considered and rejected in *Hamilton-King*," and that the decision required the trial court to deny the motions to exclude Buchan's testimony in this case.

The trial court denied the defendants' motions to exclude Buchan's testimony. Less than a year later, however, the Supreme Court of Georgia issued its opinion in *HNTB Ga., Inc. v. Hamilton-King*, wherein it reversed this Court's decision in that case. 287 Ga. at 641. In so doing, the Supreme Court expressly rejected the same legal arguments that the plaintiffs in the instant case had asserted in advocating for the admission of Buchan's expert opinion testimony. Citing to former OCGA § 24-9-

67. (b),[13] which governed the admissibility of expert testimony in civil cases at that

---

[13] Former OCGA § 24-9-67.1 (b) provided as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

In 2011, the Georgia General Assembly repealed the Evidence Code in its entirety and replaced it with a new Evidence Code, the provisions of which became effective on January 1, 2013, and apply to any motion, hearing or trial commenced on or after such date. Ga. L. 2011, p. 99, §§ 1, 101. Pursuant to that legislative act, former OCGA § 24-9-67.1 (b) was essentially reenacted as OCGA § 24-7-702 (b), which provides, in relevant part, as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise,

time, the Supreme Court ruled as follows:

> Reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training. There are many different kinds of experts and many different kinds of expertise, and it follows that the test of reliability is a flexible one, the specific factors neither necessarily nor exclusively applying to all experts in every case.

(Citations and punctuation omitted.) Id. at 642-643 (1).

Applying these principles to the proposed expert opinion testimony at issue in that case, the Supreme Court agreed with the trial court's finding that, although the witness was "marginally qualified to testify as an expert," the plaintiffs had "failed

---

if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

13

to provide any indication of the principles and methods employed by [the witness] in reaching his conclusions, rendering them unreliable as defined by OCGA § 24-9-67.1 (b) (2) and (3) because they 'cannot be validated against accepted standards, tested or reviewed.'" (Footnote omitted.) Id. at 643 (1), n. 1. Further, the Supreme Court ruled as follows:

> Reading the trial court's order as a whole, it is clear the court identified the legal issue relevant to [the witness'] testimony, whether the design of the bridge project violated the applicable standard of care, and correctly examined [the witness'] methodology in light of the *Daubert* standard. The court specifically noted [the witness'] failure to cite any treatise or authority supporting his belief that under readily ascertainable and verifiable standards recognized by practitioners in the field, the construction design plan was below standard. It also noted the absence of any testing indicating evidence of similar accidents on interstate highways and the difficulty of ascertaining error rates in the use of engineering judgment. It did so not because it interpreted Georgia law to require evidence of testing or error rates in every case, but in an attempt to identify some foundation for [the witness'] conclusion that bridge construction design plans lacking shoulders and/or lighting are inherently defective. The trial court thus chose among reasonable means of evaluating reliability, adjusted and applied the *Daubert* factors to the circumstances of this case, and ultimately decided that [the witness'] conclusions, based solely on his own assertions, were unsupported by

14

either the *Daubert* factors or any other reasonable reliability criteria.[14] Nothing in *Daubert* or [OCGA] § 24-9-67.1 requires a trial court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. Under the facts of this case, we cannot say the trial court's application of the *Daubert* factors and decision to exclude [the witness'] testimony was a manifest abuse of discretion.[15]

(Citations and punctuation omitted.) Id. at 643-644 (1).

Further, on the issue of whether the witness' experience provided a sufficient foundation for his testimony, the Court stated that the witness had conceded

that his conclusions are based entirely on his "engineering judgment," unsupported by any criteria by which the court could measure its reliability. He had never before designed, reviewed or evaluated a construction plan for a similar bridge construction project and had never been qualified as an expert in any case involving bridge construction design. He could not cite a single instance in his years of experience where a construction plan called for shoulders or lighting during the construction period. He conceded that the Manual on Uniform Traffic

---

[14] See *Mason v. Home Depot USA*, 283 Ga. 271, 279-280 (5) (658 SE2d 603) (2008) (expert's testimony based solely on personal experience and opinion unsupported by scientific journals or reliable testing procedures was not the product of reliable principles and methods).

[15] See *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 141-142 (119 SCt 1167, 143 LE2d 238) (1999) (trial court is granted "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination").

Control Devices, the basic standard in the industry for traffic control, did not require shoulders or lighting on the subject bridge and that nothing in the standards promulgated by the American Association of State Highway and Transportation Officials required the same. Nor could he cite any other publication, standard, statute, or regulation, federal or state, which set forth an industry standard requiring the use of shoulders or lighting on this bridge construction project. While he had reviewed test data related to automobile accidents on interstate highways generally, he admitted that such data had no relevance to the circumstances of this case. In fact, [the plaintiffs] have presented no evidence that [the witness] has any experience that would supply the foundation supporting his methodology and conclusions.

Id. at 644-645 (2). The Supreme Court emphasized, however, that

*[t]his is not to say that [an expert witness'] professional experience cannot provide some evidence of reliability, only that experience, standing alone, does not render reliable all opinions an expert may express*. While both federal and Georgia courts have under different facts found no abuse of discretion when the trial court held expert testimony admissible based solely on the expert's knowledge and experience, there was some evidence in each of these cases that the expert had experience with the particular procedure or practice at issue or the proffering party offered evidence explaining the absence of reliability criteria. *In contrast, [the witness] admits he has had no personal experience in the design or evaluation of construction traffic control plans and appellees have failed to make any showing of why a relevant experience base is unavailable in this case.*

16

(Citations omitted; emphasis supplied.) Id. at 645 (2). The Supreme Court concluded that, "[b]ecause [the plaintiffs] failed to satisfy the *Daubert* factors or any other reasonable criteria by which the [trial] court could measure the reliability of [the witness'] conclusions, it was within the trial court's discretion to exclude his testimony." Id. at 646 (2).

Returning to the instant case, the record shows that AGLC and Tinker relied on the Supreme Court's decision in *HNTB Ga., Inc. v. Hamilton-King* when they asked the trial court to reconsider its denial of their motions to exclude Buchan's testimony. The trial court conducted a hearing on the motions to reconsider. In its orders granting the motions, the trial court analyzed the record in light of this new, binding precedent and concluded that the plaintiffs had failed to show that Buchan's opinions were reliable, finding that his opinions could not be validated against accepted standards, tested, or reviewed, as required by former OCGA § 24-9-67.1 (b) and *HNTB Ga., Inc. v. Hamilton-King*. See *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. at 642-644 (1). The trial court noted that Buchan had "failed to cite any treatise or authority supporting his belief that[,] under readily ascertainable and verifiable standards recognized by practitioners in the field, AGLC's actions in connection with this incident fell below the standard of care." (Punctuation omitted.) In addition, the

17

court found that Buchan had failed to demonstrate that companies that are similar to AGLC meet the standard of care that he advocates or that AGLC violated any applicable statutes or regulations in this case.[16] See id. The court also concluded that Buchan lacked the requisite experience to serve as an expert or to provide a reliable foundation for his opinions on the natural gas practices and procedures at issue in this case, noting that he had no experience with warnings on natural gas master meters, locks on such meters, or master meter operators. See id. at 644-645 (2). Consequently, the court ruled that "Buchan's opinions, based solely on his own assertions, are unsupported by either the *Daubert* factors or any other reasonable reliability criteria," and, as a result, must be excluded. (Punctuation omitted.)

As shown above, the record and the law supports these conclusions. Thus, we find no error in the trial court's determinations that Buchan is not qualified to serve as an expert witness in this case and that his opinions are not sufficiently reliable to

---

[16] Contrary to the plaintiffs' contention, the record shows that Buchan failed to identify any applicable natural gas regulation that AGLC violated in this case, nor did he identify any violations of applicable propane gas industry standard practices. In fact, the trial court specifically ruled that the "regulations cited by the Plaintiffs either are not applicable [in this case] or do not require the activities Buchan asserts [AGLC] should have engaged in here." Moreover, as noted above, the Georgia Public Service Commission found that there was no evidence that AGLC committed any violations of the applicable pipeline safety regulations.

be admissible at trial on the question of whether either AGLC or Tinker was negligent.[17] It follows that the court did not abuse its discretion in excluding his testimony on these bases.

(b) The plaintiffs also argue that, because Buchan has some experience in the propane gas industry, he should be allowed to testify as an expert at trial, leaving the jury to decide what weight and credibility it should assign to his opinion testimony. As we concluded in the previous subdivision, however, the trial court properly found that Buchan lacked the qualifications to serve as an expert witness in this case.

Moreover, the Supreme Court rejected a similar argument in *HNTB Ga., Inc. v. Hamilton-King*, emphasizing the trial court's role in determining the admissibility of expert testimony, wherein it "acts as a gatekeeper, assessing both the witness'

---

[17] See generally *Ga. Cas. & Surety Co. v. Atmos Energy Corp.*, 2007 U. S. Dist. LEXIS 89122 (M.D. Ga. 2007) (In a case arising from an explosion following a natural gas leak, the plaintiffs alleged that the defendant failed to prevent and/or properly respond to a gas leak. The plaintiffs' expert, Buchan, opined that the defendant did not comply with applicable federal pipeline safety regulations or industry practices. The defendant moved to exclude Buchan's testimony, challenging his qualifications and the reliability of his conclusions. The court concluded that Buchan was qualified to testify as an expert only as to the content and importance of the federal statutes and regulations governing pipeline safety, but his opinions as to whether the defendant violated applicable regulations or was otherwise negligent and whether such violations or negligent acts were a proximate cause of the explosion were unreliable and, thus, inadmissible.).

19

qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." (Citations omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. at 642 (1). Quoting the Supreme Court of the United States, our Supreme Court stated that the objective of the requirement that the trial court act as a gatekeeper

> is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.[18] The [trial] court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it. Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Thus, regardless of an expert's experience or qualifications, the proffering party bears the burden of presenting evidence of reliability in order to meet the standards of OCGA § 24-9-67.1. *To hold otherwise would eviscerate the trial court's gatekeeper role and allow all expert testimony, even that based on nothing more than the untested opinion of one individual.*

---

[18] *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 152 (119 SCt 1167, 143 LE2d 238) (1999).

(Citations and punctuation omitted; emphasis supplied.) Id. at 645-646 (2).

Based upon this authority, and given our ruling in Division 1 (a), supra, we conclude that the trial court did not abuse its discretion in excluding Buchan's testimony instead of allowing him to testify and leaving the weight and credibility of his testimony for the jury to determine.

(c) The plaintiffs further contend that the trial court erred to the extent it ruled that the Supreme Court's decision in *HNTB Ga., Inc. v. Hamilton-King* "required" it to exclude Buchan's testimony in this case. They argue that the decision did not "mandate" that the trial court exclude the testimony of an expert such as Buchan, but that it simply reiterated the principle that an appellate court cannot substitute its judgment for the trial court and must limit its review to determining whether the trial court abused its discretion in admitting or excluding an expert's testimony.

While we agree that the appropriate standard for appellate courts is to review a trial court's decision on the admissibility of such evidence for an abuse of its discretion,[19] we find no such abuse in this case for the reasons explained in subdivisions (a) and (b) of this Division. Moreover, for those same reasons, we find that the plaintiffs' suggestion that the trial court excluded Buchan's testimony without

[19] See footnote 9, supra.

21

considering the record or conducting the requisite legal analysis to be completely without merit.

*Case No. A13A1620*

2. The plaintiffs contend that the trial court erred in granting AGLC's motion for summary judgment on their claims for negligence, negligence per se, nuisance, and negligent entrustment.[20] As noted above, the plaintiffs alleged that AGLC was negligent because it failed to install a lock or place a warning sticker on the master meter, failed to train or supervise Tinker as a master meter operator, and violated applicable laws and regulations. They also alleged that the unlocked master meter was a dangerous condition that constituted a nuisance.

In granting summary judgment to AGLC, the trial court concluded that the standards of care in the natural gas industry with respect to the practices and procedures at issue in this case is a matter beyond the ken of ordinary lay persons and that, without the testimony of Buchan or a qualified expert witness, the plaintiffs are unable to establish the standard of care in that industry in 2003 or to show that AGLC

---

[20] The plaintiffs do not challenge the grant of summary judgment to AGLC on their remaining claims.

22

breached that standard of care. It ruled that, as a result, AGLC was entitled to judgment as a matter of law on the plaintiffs' complaints.

Although the plaintiffs argue, on appeal, that the trial court erred because their claims allege acts of ordinary negligence that the jury can understand and consider without the benefit of expert testimony, this assertion contradicts their arguments in the court below. The record shows that, during the hearing on the original motions to exclude Buchan's testimony, the plaintiffs' counsel argued as follows:

> [T]his is a system, a gas system. Gas comes out of the ground somewhere, I don't know. It's a pipe across the country and it ends up in Trenton, Georgia. And all of these defendants had a role in this system. And so what Mr. Buchan brings fundamentally to the jury in this case is an understanding of this system. . . . He's an expert in pipeline safety systems, regulations. *And so he's going to be able to help the jury understand things that I think most jurors and I know myself don't completely understand: How this system works first of all, and then what the regulations are related to this system.* And so – what are those laws out there? And then he's also going to remind the jury that simply adhering to regulations doesn't mean that you've conformed with your legal duty under our system of law. . . . *So these are the kinds of things that Mr. Buchan will help the jury understand. . . . [T]hat's the whole reason we have expert witnesses in our system, is to help the jury understand the things that they can't understand. . . .*

23

Dealing with standard of care issues. . . . Fundamentally, [the issues presented in this case are] similar to the kind of issues that arise frequently in medical malpractice [cases]. . . . The defendants have got a standard of care expert whom they want to put [on the stand] and have the jury hear him say, this is the standard of care and the defendants didn't breach it. Well, *we want to put up an expert who's going to say this is the standard of care and the defendants did breach that standard of care. . . .*

[W]e're dealing with an industry that's . . . undergone enormous transition in the last fifteen or twenty years in the deregulation process. And *I'm not sure anybody understand[s] exactly how the natural gas industry works these days. I know I don't.* And I've been studying [the industry] for the better part of a couple of years . . . [a]nd I still, even when I look at my gas bill at home, I'm not exactly sure where this money's going. So *that's where the expert can bring some explanation to a jury and help them understand how . . . the deregulation process has led us to the point where we are today, and what that point is, and who's supposed to be ultimately responsible for the safety of the gas that comes out of the ground and comes into our homes. . . .* [T]hat's where this court has the discretion to allow Mr. Buchan *to help the jury understand* a sense of where the process is now, where the gas industry is now and *define what some duties are along the way*, that . . . will eventually be specific to the various defendants here.

(Emphasis supplied.) Counsel concluded by arguing that Buchan's testimony was necessary to help the jury understand the regulations that created certain duties for

each of the defendants and whether they breached those duties, due to the "complicated nature" of this case and the "interplay" between the responsibilities of each of the defendants.

Accordingly, under the circumstances presented in this case, including the plaintiffs' admission in the court below that expert testimony is necessary to show that AGLC violated any applicable regulations or standards of care, we conclude that the trial court did not err in ruling that the plaintiffs' allegations of negligence by AGLC involved specialized matters that are beyond the ken of ordinary lay persons.[21] Thus, we find no error in the trial court's ruling that, without admissible expert testimony, the plaintiffs could not prevail on their claims against AGLC and that AGLC was entitled to judgment as a matter of law on their complaints. See *Hamilton-King v. HNTB Ga., Inc.*, 311 Ga. App. 202, 203, 204 (1), 205 (2) (715 SE2d 476) (2011) (finding that the plaintiffs had failed to assert simple negligence claims against

---

[21] Cf. *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 745-747 (2) (706 SE2d 676) (2011) (The plaintiff was injured when he came into contact with an exposed live electrical wire owned and maintained by an electric company. He contended that the company failed to inspect the electrical equipment for at least five years before the incident. This Court held that the issue presented was whether the frequency of the inspections was reasonable under the circumstances, not whether inspections had been properly performed. It ruled that, because the reasonableness of the frequency of inspections is an issue that is routinely decided by jurors, the plaintiff was not required to present expert testimony on that issue.).

the defendants and noting that, in response to the defendants' motions for summary judgment, the plaintiffs consistently asserted that their claims were based upon allegations of professional negligence and that they never argued that their claims were also based on ordinary negligence).

*Judgments affirmed. Phipps, C. J., and Branch, J., concur.*