S09G1219. HNTB GEORGIA, INC. v. HAMILTON-KING et al.
S09G1224. PLANT IMPROVEMENT COMPANY, INC.
v. HAMILTON-KING et al.

(697 SE2d 770)

THOMPSON, Justice.

We granted certiorari to the Court of Appeals in these cases to determine whether the Court of Appeals erred by reversing the trial court's grant of summary judgment in favor of appellants HNTB Georgia, Inc. (HNTB) and Plant Improvement Company, Inc. d/b/a Seaboard Construction Company (Seaboard). See *Hamilton-King v. HNTB Georgia*, 296 Ga. App. 864 (676 SE2d 287) (2009). For the reasons that follow, we reverse.

Appellees Lakeisha Hamilton-King and her brother Justin Hamilton were injured when they were struck by a van in a bridge construction zone on Interstate 95 in south Georgia. Their brother Johnny was killed in the same accident. All three had exited their vehicle after they were involved in a separate collision and their car became disabled on the bridge. A police officer who stopped to help displayed his emergency signals and attempted to slow traffic traveling onto the bridge where appellees were standing. The van, allegedly traveling at a speed close to 70 miles per hour on the darkened interstate highway, did not slow down as it approached the accident site and struck appellees. Justin and Lakeisha, in both her individual capacity and as the administrator of Johnny's estate, sued HNTB, the designer of the bridge-widening project, and Seaboard, the general contractor, for negligence, specifically alleging, inter alia, that HNTB and Seaboard failed to include shoulders in their traffic control plans and failed to implement proper lighting in the bridge construction zone.

Prior to trial, HNTB and Seaboard filed motions to exclude expert testimony challenging the qualifications of appellees' expert witness, Jerome Thomas, a licensed engineer. They asserted both that Thomas lacked the education and experience to testify about construction design standards and that his proffered testimony failed to meet the reliability requirements of OCGA § 24-9-67.1. The trial court granted their motions to exclude and in the absence of admissible expert testimony establishing the standard of care and breach thereof, the trial court also granted their subsequent motions for summary judgment. The Court of Appeals reversed, concluding that the trial court abused its discretion by excluding Thomas'

testimony based on its too "rigid" application of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993), a case identifying certain factors relevant in determining the reliability of expert testimony. See *Mason v. Home Depot U.S.A.*, 283 Ga. 271 (658 SE2d 603) (2008) (trial court's application of *Daubert* standards upheld in Georgia case because OCGA § 24-9-67.1 is based on Federal Rule 702, which is based on the holding of *Daubert*). See also *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 141 (119 SC 1167, 143 LE2d 238) (1999) (applying *Daubert* standard to all expert testimony).

1. The determination of whether " 'a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion.' " *Moran v. Kia Motors America*, 276 Ga. App. 96, 97 (622 SE2d 439) (2005). OCGA § 24-9-67.1 (b), which governs the admissibility of expert testimony in civil cases, states that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case.

In determining the admissibility of expert testimony, the trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. *Kumho Tire Co.*, supra, 526 U. S. at 141. See *McDowell v. Brown*, 392 F3d 1283, 1298 (IV) (11th Cir. 2004) (*Daubert* "impressed a gatekeeping role upon judges, and directed them to 'ensure that any and all scientific testimony or evidence is not only relevant, but reliable' "); *Cotten v. Phillips*, 280 Ga. App. 280, 286 (633 SE2d 655) (2006) (recognizing trial court's role as gatekeeper of expert testimony). Reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training. *Kumho Tire Co.*, supra, 526 U. S. at 141;

*Daubert*, supra, 509 U. S. at 592 (II) (C); *Moran*, supra, 276 Ga. App. at 98. There are many different kinds of experts and many different kinds of expertise, *Kumho Tire Co.*, supra, 526 U. S. at 150, and it follows that the test of reliability is a flexible one, the specific factors "neither necessarily nor exclusively applying to all experts in every case." Id. at 141.

Applying these principles to the instant case, we find no abuse of the trial court's discretion in ruling Thomas' testimony inadmissible. After a careful review of Thomas' deposition testimony and the documents upon which he relied, the trial court determined that although Thomas was qualified to testify as an engineering expert,[1] appellees failed to provide any indication of the principles and methods employed by Thomas in reaching his conclusions, rendering them unreliable as defined by OCGA § 24-9-67.1 (b) (2) and (3) because they "cannot be validated against accepted standards, tested or reviewed."[2]

Reading the trial court's order as a whole, it is clear the court identified the legal issue relevant to Thomas' testimony, whether the design of the bridge project violated the applicable standard of care,[3] and correctly examined Thomas' methodology in light of the *Daubert* standard. The court specifically noted Thomas' failure to cite any treatise or authority supporting his belief that under readily ascertainable and verifiable standards recognized by practitioners in the field, the construction design plan was below standard. See *Daubert*, supra, 509 U. S. at 594 ("Widespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' [cit.], may properly be viewed with skepticism."); *United States v. Downing*, 753 F2d 1224, 1238 (3d Cir. 1985)

---

[1] The trial court found Thomas marginally qualified to testify as an expert regarding traffic control measures on highway construction sites based in large part on his post-retirement self-study of manuals relied upon by persons responsible for making such decisions in the engineering and construction design industries. The court concluded that the "education and work experience of Mr. Thomas provided him with skills that permit him to understand and interpret manuals and related materials which are relevant to the standard of care for designers of traffic control measures, even though he may not have been directly involved with that issue during his working years."

[2] In the first day of Thomas' deposition, Thomas offered several conclusions regarding the alleged negligence of HNTB and Seaboard. When his deposition was reconvened several months later, however, he stated he was providing and would testify to only two conclusions, that appellants should have included shoulders and temporary lighting in the construction traffic control plan. The trial court's order addresses only the admissibility of Thomas' conclusions regarding the failure to include shoulders and lighting and our review on appeal is similarly limited to these issues.

[3] The court correctly rejected as irrelevant Thomas' amorphous claim that if the traffic control plan had included shoulders the injured parties likely would not have been in the traffic lane and would not have been injured.

(reliability assessment permits identification of relevant scientific community and determination of degree of acceptance within that community). It also noted the absence of any testing indicating evidence of similar accidents on interstate highways and the difficulty of ascertaining error rates in the use of engineering judgment. It did so not because it interpreted Georgia law to require evidence of testing or error rates in every case, but in an attempt to identify some foundation for Thomas' conclusion that bridge construction design plans lacking shoulders and/or lighting are inherently defective. The trial court thus chose among reasonable means of evaluating reliability, adjusted and applied the *Daubert* factors to the circumstances of this case, and ultimately decided that Thomas' conclusions, based solely on his own assertions, were unsupported by either the *Daubert* factors or any other reasonable reliability criteria. See *Mason*, supra, 283 Ga. at 279 (5) (expert's testimony based solely on personal experience and opinion unsupported by scientific journals or reliable testing procedures was not the product of reliable principles and methods). Nothing in *Daubert* or OCGA § 24-9-67.1 "requires a [trial] court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *General Elec. Co. v. Joiner*, 522 U. S. 136, 146 (118 SC 512, 139 LE2d 508) (1997). Under the facts of this case, we cannot say the trial court's application of the *Daubert* factors and decision to exclude Thomas' testimony was a manifest abuse of discretion. *Kumho Tire*, supra, 526 U. S. at 141-142 (trial court is granted "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination").

2. Appellees argue that Thomas' experience provides a sufficient foundation for his testimony. Thomas conceded, however, that his conclusions are based entirely on his "engineering judgment," unsupported by any criteria by which the court could measure its reliability. He had never before designed, reviewed or evaluated a construction plan for a similar bridge construction project and had never been qualified as an expert in any case involving bridge construction design. He could not cite a single instance in his years of experience where a construction plan called for shoulders or lighting during the construction period. He conceded that the Manual on Uniform Traffic Control Devices, the basic standard in the industry for traffic control, did not require shoulders or lighting on the subject bridge and that nothing in the standards promulgated by the American Association of State Highway and Transportation Officials required the same. Nor could he cite any other publication, standard, statute, or regulation, federal or state, which set forth an industry standard requiring the use of shoulders or lighting on this bridge construction project. While he had reviewed test data related

to automobile accidents on interstate highways generally, he admitted that such data had no relevance to the circumstances of this case. In fact, appellees have presented no evidence that Thomas has any experience that would supply the foundation supporting his methodology and conclusions.

This is not to say that professional experience cannot provide some evidence of reliability, only that experience, standing alone, does not render reliable all opinions an expert may express. While both federal and Georgia courts have under different facts found no abuse of discretion when the trial court held expert testimony admissible based solely on the expert's knowledge and experience, there was some evidence in each of these cases that the expert had experience with the particular procedure or practice at issue or the proffering party offered evidence explaining the absence of reliability criteria. See *Primiano v. Cook*, 2010 U. S. App. LEXIS 8859 (9th Cir. 2010); *Dickenson v. Cardiac & Thoracic Surgery*, 388 F3d 976, 982 (6th Cir. 2004); *Brady v. Elevator Specialists*, 287 Ga. App. 304 (653 SE2d 59) (2007). In contrast, Thomas admits he has had no personal experience in the design or evaluation of construction traffic control plans and appellees have failed to make any showing of why a relevant experience base is unavailable in this case. See *Daubert*, supra, 509 U. S. at 593-594 (explaining reasons why some theories or techniques may not have been subject to peer review).

We agree with the Eleventh Circuit Court of Appeals that the importance of the trial court's gatekeeper role, whether under OCGA § 24-9-67.1 or Federal Rules of Evidence 702, cannot be overstated. *United States v. Frazier*, 387 F3d 1244, 1260 (11th Cir. 2004).

> As the Supreme Court framed it in *Kumho Tire*: "the objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." 526 U. S. at 152, 119 SC at 1176. The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U. S. at 595, 113 SC at 2798 (quoting Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991) ("Weinstein")). Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon

otherwise inadmissible hearsay if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

Id. at 1260. Thus, regardless of an expert's experience or qualifications, the proffering party bears the burden of presenting evidence of reliability in order to meet the standards of OCGA § 24-9-67.1. *Mason*, supra, 283 Ga. at 279-280. To hold otherwise would eviscerate the trial court's gatekeeper role and allow all expert testimony, even that based on nothing more than the untested opinion of one individual.

Because appellees failed to satisfy the *Daubert* factors or any other reasonable criteria by which the court could measure the reliability of Thomas' conclusions, it was within the trial court's discretion to exclude his testimony.

3. In light of its ruling on the admissibility of Thomas' testimony, the Court of Appeals did not address whether the trial court erred by granting summary judgment on the asserted claim of simple negligence. The court is directed to determine on remand whether the remaining claim is a simple negligence rather than a professional negligence cause of action and, if so, whether there remains a genuine issue of material fact as to that claim.

*Judgment reversed and the case remanded with direction. All the Justices concur.*

DECIDED JUNE 28, 2010 —
RECONSIDERATION DENIED JULY 26, 2010.

*Carlock, Copeland & Stair, Gregory H. Wheeler, Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Richard A. Brown, Jr., Steven G. Blackerby*, for appellants.

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Martha W. Williams, Robert S. Kraeuter, Kathryn H. Pinckney*, for appellees.