**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 13, 2015**

# In the Court of Appeals of Georgia

A15A0502. CLAYTON COUNTY v. SEGREST.                    JE-024

ELLINGTON, Presiding Judge.

During a police pursuit, the suspect's vehicle struck the motorcycle of James Segrest, who died from his injuries. Karen Segrest, James Segrest's surviving spouse, filed this wrongful death action against Clayton County. Segrest contended that the County's officer showed reckless disregard for proper law enforcement procedures in his decisions to initiate and continue the pursuit of the suspect, and so caused the decedent's death. Following our grant of its application for interlocutory appeal, the County appeals from the trial court's order denying its motions to disqualify Segrest's experts and its motion for summary judgment. The County claims that the trial court erred in denying its motions to disqualify to the extent that the experts' opinions are not reliable, do not assist the trier of fact, and amount to legal conclusions. The

County further contends that, as its officer did not recklessly disregard proper law enforcement procedures, the trial court erred in denying its motion for summary judgment. For the reasons set forth below, we affirm the trial court's order denying the County's motion for summary judgment, and, as to the order denying the County's motions to disqualify, we affirm in part and reverse in part.[1]

Under OCGA § 9-11-56 (c),

[s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014).

---

[1] Segrest contended that the County waived its sovereign immunity pursuant to OCGA § 33-24-51 by purchasing liability insurance arising from the use of a County motor vehicle by a County employee, and this assertion was not challenged for purposes of the County's motion for summary judgment. See *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001).

The evidence shows that on the evening of August 14, 2008, Lance Locke was driving south on I-75 when he saw a Clayton County police officer parked on the side of the freeway. Locke saw the officer pull out and begin to accelerate behind him. The County's officer testified that when Locke passed by he saw him speeding, change lanes, and "cut[] off" another vehicle, which was forced to brake in order to avoid a collision. The officer assessed that Locke was operating his vehicle with no regard for his safety or the safety of others, and that he had committed the offense of reckless driving. Locke averred that he did not make any abrupt lane changes, cut off any cars, or come close to causing or being in a wreck.

When Locke exited off of I-75 onto State Route 54, the officer also exited the freeway. As Locke exited the highway, his car crossed the right fog line of the exit ramp. After Locke reached the end of the ramp, his car again crossed the fog line as he made a right turn from the ramp onto State Route 54, and at that time the officer activated the blue and red lights of his patrol car, signaling that Locke should pull over and stop. According to the officer, he initiated the traffic stop because of Locke's multiple lane violations and reckless driving. He also maintained that he had reason to suspect Locke was driving under the influence.

Rather than stop, Locke accelerated and attempted to elude the officer. Locke averred that he had previously received a traffic citation for which he had failed to appear in court, and he assumed that the officer had signaled for him to stop because a warrant had been issued on the outstanding traffic ticket. According to Locke, he knew of no traffic violation that he had made from the time he first saw the officer until the officer signaled him to pull over and stop.

The officer pursued Locke on State Route 54, a 45 mph zone, through intersections and red traffic lights at up to 110 mph, but Locke was traveling even faster. During the pursuit, Locke's vehicle struck the motorcycle driven by the decedent, who died from the resulting injuries. Locke averred that he would not have accelerated to the speeds which he reached had the officer not chased him; rather, Locke maintained, had the officer not initiated or had discontinued the chase, he would have slowed down and turned off the road within a few blocks.

1. As a preliminary issue, the County represents that the material facts, as shown by the deposition testimony of its officer, are undisputed because the conflicting portions of Locke's affidavit are not competent evidence.[2] The County

---

[2] The record shows that the County moved below to strike Locke's affidavit, and the trial court denied the motion.

shows that, in a June 26, 2009, hearing, Locke pled guilty to, among other charges arising out of his actions on August 14, 2008, driving under the influence, reckless driving, failure to maintain lane, and speeding. Therefore, the County argues, those portions of Locke's affidavit in contradiction to his testimony at that hearing should not have been considered for purposes of summary judgment. The County does not present any legal authority to support its argument that portions of Locke's affidavit are not competent evidence. Accordingly, we deem the argument abandoned. See Court of Appeals Rule 25 (c) (2); *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) (Rhetoric is not a substitute for legal analysis, which requires "a discussion of the appropriate law as applied to the relevant facts.").

2. The County claims that the opinions of Segrest's experts, Geoffrey Alpert and Andrew Scott, are unreliable, would not assist the trier of fact, and amount to legal conclusions, and that the trial court therefore erred in denying its motions to disqualify these experts. OCGA § 24-7-702 (b)[3] provides that if scientific, technical,

___

[3] Our new Evidence Code applied to the County's motions to disqualify, which were filed in February 2013. See Ga. L. 2011, pp. 99, 214, § 101. "[B]ecause OCGA § 24-7-702 is 'substantively identical' to its predecessor statute, former OCGA § 24-9-67.1, cases decided under the former statute offer useful guidance when analyzing the current version of the statute." (Citation omitted.) *Dempsey v. Gwinnett Hosp. System*, 330 Ga. App. 469, 471, n. 3 (765 SE2d 525) (2014).

Further, in enacting the new Evidence Code, the General Assembly stated its

5

or other specialized knowledge will assist the trier of fact to understand the evidence, or to determine a fact in issue, an expert may testify thereto if "[t]he testimony is based upon sufficient facts or data," "[t]he testimony is the product of reliable principles and methods," and "[t]he witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact." The proffering party bears the burden of presenting evidence of reliability. See *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 646 (2) (697 SE2d 770) (2010). And "[t]he determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) Id. at 642 (1).

(a) The County first asserts that the trial court erred in failing to exclude Alpert's and Scott's testimony because their opinions were based on their own unsupported beliefs. See, e. g., *L-3 Communications Titan Corp. v. Patrick*, 317 Ga.

intent "to adopt the Federal Rules of Evidence, as interpreted by the Supreme Court of the United States and the United States circuit courts of appeal as of January 1, 2013, to the extent that such interpretation is consistent with the Constitution of Georgia." Ga. L. 2011, p. 99, § 1. See *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015) ("[W]here the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance.").

6

App. 207, 213-214 (1) (729 SE2d 505) (2012) ("[T]he trial court abused its discretion in admitting opinion evidence which is connected to existing data only by the ipse dixit of the expert.") (punctuation and footnote omitted). More specifically, the County asserts that Alpert's and Scott's testimony as to what constitute proper law enforcement procedures in the context of police pursuits[4] is not supported by reliable principles and methods.

"In determining the admissibility of expert testimony, the trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." (Citations omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. at 642 (1).

> Reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.

---

[4] According to Alpert, the national law enforcement standard with respect to pursuits is a "balancing test." This test requires that, in order to justify a chase, the need to immediately apprehend the suspect should outweigh the risk to the public created by the chase. In his affidavit, Scott refers to the balancing test as "nationally adopted." And in his deposition, Scott states that law enforcement officers are trained in the balancing test, which test is also part of the County's chase policy.

7

(Citations omitted.) Id. See generally *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993). However, "[t]here are many different kinds of experts and many different kinds of expertise, and it follows that the test of reliability is a flexible one, the specific factors neither necessarily nor exclusively applying to all experts in every case." (Citation and punctuation omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. at 643 (1). "It is the possession of special knowledge derived either from experience, study, or both in a field of expertise that makes one an expert." (Punctuation and footnote omitted.) *Brady v. Elevator Specialists, Inc.*, 287 Ga. App. 304, 306 (1) (653 SE2d 59) (2007).

The record shows that both Alpert and Scott possess specialized knowledge concerning police pursuits, as well as the policies and procedures applicable thereto, and that the foundation for their knowledge is derived from study or experience. Alpert, a professor of criminology, has conducted extensive research in the field of police pursuits, including applicable policies and procedures, for approximately 30 years, and in the course thereof he has interviewed hundreds of officers and hundreds of suspects and has evaluated thousands of official police pursuit records. Alpert has also authored numerous peer reviewed articles on the subject of police chases. Scott has over 30 years of law enforcement experience, including extensive experience with

8

police chases and the policies and procedures applicable thereto. See *Kumho Tire Co. Ltd. v. Carmichael*, 526 U. S. 137, 156 (119 SCt 1167, 143 LE2d 238) (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience[.]"). He has also served as an assessor for two law enforcement accreditation bodies and conducted over 100 assessments of law enforcement agencies, including their pursuit policies. Thus, the evidence shows that the experts based their opinions on their extensive study regarding, or experience with, the specific law enforcement procedures and practices at issue, and, under the circumstances, the trial court could conclude that their opinions were the product of reliable principles and methods and not generalized or subjective beliefs. See *Champion v. Outlook Nashville, Inc.*, 380 F3d 893, 909 (II) (D) (6th Cir. 2004) (Because the expert had considerable experience in the field of criminology and was testifying concerning a discrete area of police practices about which he had specialized knowledge, the district court did not abuse its discretion in admitting the testimony.); *Savannah Cemetery Group v. DePue-Wilbert Vault Co*., 307 Ga. App. 206, 213 (3) (704 SE2d 858) (2010) ("The appropriate standard for assessing the admissibility of the opinion of the expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so."). Compare *HNTB Ga., Inc.*

*v. Hamilton-King*, 287 Ga. at 644-645 (2) (The trial court did not abuse its discretion in excluding opinion testimony of an expert who had no personal experience with the procedure at issue and concededly based his conclusions on "his engineering judgment," entirely unsupported by any criteria by which the trial court could measure its reliability.). We find no abuse of discretion in the trial court's failure to exclude Alpert's and Scott's opinions as to proper law enforcement procedures in the context of a police pursuit.

(b) The County further contends that Alpert's and Scott's opinions that its officer violated the County's pursuit policy should have been excluded because that determination was not beyond the understanding of the average lay person. OCGA § 24-7-702 (b) requires that expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Under this requirement, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." (Citation omitted.) *United States v. Frazier*, 387 F3d 1244, 1262 (III) (A) (11th Cir. 2004). "Properly qualified expert witnesses may render an opinion on any matter within their realm of expertise, so long as it is based upon conclusions drawn by the expert that the jury could not ordinarily

determine for themselves." (Footnote omitted.) *Johnson v. Knebel*, 267 Ga. 853 (1) (485 SE2d 451) (1997).

Here, the County's chase policy allowed its officer to pursue suspected violators of criminal or traffic laws, other than minor traffic offenses, "if the vehicle being pursued will present a serious danger to the community if not apprehended," but subject to the limitation that

> pursuits are not authorized if conditions prevail by which the heightened risk of injury to third parties is unreasonable in relation to the interest in apprehending the suspect and where the risk of injury to third parties caused by the initiation or continuation of the pursuit is unreasonable under the circumstances.

Alpert and Scott possessed specialized knowledge of police pursuits which could inform the trier of fact as to both sides of that balancing test in light of the evidence. Further, a lay person who is not a law enforcement professional is unlikely to have any personal experience with either high speed police pursuits or law enforcement policy. See *Champion v. Outlook Nashville, Inc.*, 380 F.3d at 908 (II) (D) (6th Cir. 2004) ("Courts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact.") (citation omitted). As Alpert and Scott could draw conclusions from the

evidence that a lay person could not, the trial court did not abuse its discretion in failing to preclude their opinions that the County's officer violated the County's pursuit policy.

(c) The County also argues that the trial court erred in failing to exclude opinions that its officer "proximately caused" the decedent's death or acted in "reckless disregard" of a standard, as those opinions amount to legal conclusions. Our new Evidence Code provides: "[T]estimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact[.]" OCGA § 24-7-704 (a).[5] However, an expert may not merely tell the jury what result to reach and may not testify to the legal implications of conduct. *Montgomery v. Aetna Casualty & Surety Co.*, 898 F2d 1537, 1541 (II) (B) (11th Cir. 1990).[6]

---

[5] An exception to this rule is provided in OCGA § 24-7-704 (b) ("No expert witness testifying with respect to the mental state or condition of an accused in a criminal proceeding shall state an opinion or inference as to whether the accused did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.").

[6] See also *United States v. Long*, 300 Fed. Appx. 804, 814 (II) (B) (2) (11th Cir. 2008) ("An expert witness may not testify as to his opinion regarding ultimate legal conclusions," but may testify to an ultimate issue of fact.) (citation omitted).

Here, Alpert acknowledged in his deposition testimony that "reckless disregard" is a legal term, without any accepted definition in the field of pursuit policy. In an affidavit, however, Alpert deposed that the County's officer "recklessly disregarded proper police procedures . . . in his decision to initiate and continue the pursuit of Locke." Similarly, Scott acknowledged in his deposition that "reckless disregard," does not have an accepted meaning in field of police practices, and is a legal standard, but deposed in an affidavit that the County's officer's "actions show reckless disregard of proper police procedures." As to "proximate cause," Scott stated that he could not give an exact legal definition but he could apply a working definition to give a proximate cause opinion. We agree with the County that the trial court abused its discretion in failing to exclude opinions that the County's officer acted in "reckless disregard" of a standard, or "proximately caused"[7] the decedent's injuries, as Alpert's and Scott's opinions, to the extent they incorporate these phrases,

---

[7] The County's arguments are pertinent to the issue of whether Segrest's experts could opine that the County's officer was a proximate, or legal, cause of the decedent's injury and death, and not whether the experts could properly opine that the County's officer was a cause in fact of the decedent's injury and death. Accordingly, we do not address the latter issue.

speak to legal conclusions and would not assist the trier of fact.[8] See *Flickinger v. Toys "Я" US-Delaware, Inc.*, 492 Fed. Appx. 217, 224 (II) (B) (3) (a) (3rd. Cir. 2012) (The trial court did not exceed in discretion in prohibiting opinion testimony as to legal terms of art, which are commonly held to be inappropriate for expert testimony.).[9] Accordingly, we reverse in part the trial court's denial of the County's motions to disqualify Alpert and Scott.

3. The County contends that its officer did not recklessly disregard proper law enforcement procedures in the pursuit of Locke and that, as a result, the trial court

---

[8] This does not mean that Alpert and Scott cannot provide opinions that are relevant to these legal issues. In determining the difference between permissible opinions and impermissible legal conclusions,

> [t]he example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read.

*Owen v. Kerr-McGee Corp.*, 698 F2d 236, 240 (5th Cir. 1983).

[9] In *Lang v. Becham*, 243 Ga. App. 132, 133-134 (530 SE2d 746) (2000), we referenced as evidence expert testimony that an officer acted in reckless disregard for proper law enforcement procedures. However, it does not appear in that case that, as here, portions of the expert's opinions were challenged as legal conclusions.

14

erred in denying its motion for summary judgment. We find that the County's arguments lack merit.

(a) First, the County contends that the trial court erred in concluding that there remained a genuine issue of material fact as to whether its officer was a contributing proximate cause of the decedent's death because "proper law enforcement procedures," for purposes of OCGA § 40-6-6 (d) (2), remains undefined. The County further maintains that neither its pursuit guidelines nor the balancing standard advocated by Alpert and Scott should constitute such proper law enforcement procedures.

OCGA § 40-6-6 (d) (2) provides, in applicable part, that where a law enforcement officer in a law enforcement vehicle pursues a fleeing suspect in another vehicle, and the fleeing suspect damages property or injures or kills a person during the pursuit, then

> the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit.

As the County points out, neither the General Assembly nor our appellate courts have defined what constitute "proper law enforcement procedures" for purposes of OCGA § 40-6-6 (d) (2). In *Strength v. Lovett*, we noted that the issue was unsettled, and that those procedures could be "the procedures that a reasonable law enforcement agency would adopt, the standard procedures that most law enforcement agencies have adopted, or the actual procedures that the agency employing the pursuing officer in a particular case has adopted." 311 Ga. App. at 41 (2) (a). We declined to settle the issue in that case, however, because evidence showed that the standard procedures of law enforcement agencies and the procedure of the agency which employed the deputy who pursued the fleeing suspect, "[b]oth require[d] that an officer balance the need to immediately apprehend a fleeing suspect against the risk to the officer and the public of initiating or continuing a pursuit." Id. And in reviewing the record to ascertain if it contained evidence from which a jury could conclude that the pursuing deputy acted in reckless disregard of those law enforcement procedures, we cited provisions of the chase policy of the local government agency as well as expert testimony that the Sheriff's deputy was in "clear violation" of that policy when he decided to continue the pursuit of the suspect. Id. at 42 (2) (a).

16

As in *Strength*, the record contains evidence that the policy of the local law enforcement agency at issue is not much different from the standard policy of law enforcement agencies. Segrest adduced evidence that Clayton County's pursuit policy and nationally recognized law enforcement procedures require that an officer balance the need to immediately apprehend a fleeing suspect against the risk to the public of initiating or continuing a pursuit. Thus, if there is evidence that the County's officer acted in reckless disregard of these law enforcement procedures in deciding to initiate or continue the pursuit of Locke, such evidence presents a jury question on the issue of proximate cause for purposes of OCGA § 40-6-6 (d) (2). See *Strength*, 311 Ga. App. at 41-43 (2) (a). Contrary to the County's argument, the denial of summary judgment in this case does not indicate that the trial court resurrected a less stringent "due regard" or mere negligence standard that is inconsistent with the reckless disregard standard incorporated into OCGA § 40-6-6 (d) (2). See Ga. L. 1995, p. 855.

(b) Next, we turn to the County's argument that the discretionary acts of police officers should not be subject to hindsight review, and that this Court should therefore define "reckless disregard," for purposes of OCGA § 40-6-6 (d) (2), as requiring the same facts as necessary to overcome official immunity. Under that standard, the County would be liable for its officer's actions only if he "acted with actual malice

17

or with actual intent to cause injury." (Footnote omitted.) *Smith v. Chatham County*, 264 Ga. App. 566, 570 (2) (591 SE2d 388) (2003). However, this Court has previously defined "reckless disregard," in the context of OCGA § 40-6-6 (d) (2), to mean "conscious indifference to the consequences of an act." (Citation and punctuation omitted.) *Strength v. Lovett*, 311 Ga. App. at 42 (2). Accordingly, we find the County's argument has no merit.

(c) Having rejected the County's argument that it cannot be liable absent evidence of its officer's malice or intent to injure, there remains evidence from which a reasonable jury could conclude that the County's officer acted with conscious indifference to whether initiating or continuing the pursuit violated proper law enforcement procedures. The County's pursuit policy did not authorize a high speed pursuit of a driver suspected of minor traffic offenses. The County's policy did authorize pursuits of persons suspected of serious traffic offenses, including reckless driving, which were classified as normally presenting a "moderate degree of risk to the public." However, as noted above, that policy also provided that pursuits are nevertheless not authorized if "the risk of injury to third parties caused by the initiation or continuation of the pursuit is unreasonable under the circumstances."

18

According to the County's officer, he determined that Locke had been driving recklessly because Locke cut off another vehicle. Locke, however, averred that he did not cut off another car. See *Rahmaan v. DeKalb County*, 300 Ga. App. 572, 575-576 (685 SE2d 472) (2009) (For purposes of summary judgment, plaintiff's version of events, which differed from that of the pursuing officer, constituted evidence from which a jury could conclude the officer acted with reckless disregard of law enforcement procedures in his decision to continue the pursuit.). Viewed in the light most favorable to Segrest, as the nonmovant, a trier of fact could conclude that the County's officer knew that Locke had not committed any offense which would authorize a chase under the County's pursuit policy. See *Peach Blossom Dev. Co. v. Lowe Elec. Supply Co*., 300 Ga. App. 268, 271 (684 SE2d 398) (2009) (on a motion for summary judgment, "testimony must speak for itself" and it is inappropriate for the appellate court to weigh that testimony or determine its credibility) (citation and punctuation omitted).

Further, according to the County's officer, after he pulled out and followed Locke on I-75, he observed several "indicators" of unusual driving behavior, which included that Locke was then driving between 53 and 55 miles per hour (approximately 15 miles under the speed limit), that Locke was driving "with his

hands locked at ten and two staring straight ahead," as if did not want to be seen by the officer, and that Locke exited the freeway. According to Alpert, none of these factors should have been considered by the County's officer as cumulative or additive indications of a problem. Alpert also opined that, based on the County's policy and its required consideration of the need to apprehend the subject versus the risk created by the chase, the pursuit should never have begun.

The evidence further shows that after the chase began the County's officer pursued Locke in a commercially developed area at speeds of more than 110 mph in a 45 mph zone. The chase proceeded through intersections and red traffic lights. According to the officer, who was aware of the County's chase policy, he did not even consider whether, under those circumstances, he might be required to stop the pursuit. Considering the foregoing, there was at least some evidence from which a jury could find that the County's officer "acted with reckless disregard for proper law enforcement procedures in [his] decision to initiate or continue the pursuit," OCGA § 40-6-6 (d) (2), and the officer's actions are therefore not precluded as a proximate cause of the decedent's injuries. The trial court did not err in denying the County's motion for summary judgment.

20

*Judgment affirmed in part and reversed in part. McFadden, J., concurs and Dillard, J., concurs in judgment only.*

A15A0502.  CLAYTON COUNTY v. SEGREST.


DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. Thus, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent in future cases. *See* Court of Appeals Rule 33 (a).