**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 26, 2022**

# In the Court of Appeals of Georgia

A21A1558.  FIREMAN'S  FUND  INSURANCE  COMPANY  v.
    HOLDER CONSTRUCTION GROUP, LLC et al.

BROWN, Judge.

In this subrogation action, Fireman's Fund Insurance Company ("Fireman's") appeals the trial court's order excluding the testimony of its expert and granting summary judgment to Holder Construction Group, LLC, and McKenney's, Inc. (collectively "Defendants"), on Fireman's claim for gross negligence. For the reasons set forth below, we affirm in part and reverse in part.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citation and punctuation omitted.) *Smith v. Tenet HealthSystem Spalding*, 327 Ga. App. 878 (761 SE2d 409) (2014). "A defendant moving for summary judgment may prevail by showing the

court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." (Citation and punctuation omitted.) *Stewart v. Brown*, 343 Ga. App. 190, 190-191 (1) (806 SE2d 640) (2017). "We review a trial court's grant of summary judgment de novo, construing the evidence, and all reasonable conclusions and inferences drawn from it, in favor of the nonmovant." (Citation and punctuation omitted.) *City of College Park v. Paradies-Atlanta, LLC*, 346 Ga. App. 63, 63-64 (815 SE2d 246) (2018).

The relevant facts of this case are largely undisputed by the parties. The record shows that the Hotel Indigo in Atlanta underwent renovations in 2015, with Holder Construction Group, LLC, acting as the construction manager and McKenney's, Inc., as a subcontractor. During the renovation, McKenney's installed two roof-top air handling units called RTU 2-1 and RTU 2-2, as well as the computerized building management system which controlled the heating, ventilation, and air conditioning system.

On January 22, 2016, temperatures in Atlanta dropped below freezing and remained there until around 11:00 a.m. on January 24, 2016. The freezing temperatures prompted both air handling units to enter freeze protection mode. When

this mode is triggered, the steam valve and chilled water valve should open, the supply fan should stop, the return air damper should open, and the outside air damper should close. In spite of the freezing temperatures, however, the steam and chilled water valves on RTU 2-1 closed at around midnight on January 24, and remained closed for the next 12 hours. In addition, it is undisputed by the parties that a McKenney's employee locked open the outside air damper prior to January 24, and thus the damper was unable to close when the freeze protection mode was triggered. Water froze inside the coils of RTU 2-1, causing the coils to burst and water to pour into the hotel. Fireman's provided insurance coverage to Portman 230, LLC, the owner of the hotel and building, paying out a total of $1,306,470.86 for the loss, according to Fireman's complaint.

Fireman's brought this subrogation action against Holder Construction Group, LLC, and McKenney's, Inc., as well as various other defendants who have since been dismissed. On August 9, 2019, the trial court granted summary judgment in favor of Defendants on all of Fireman's claims apart from gross negligence. Defendants subsequently filed a motion to exclude the testimony of Jeffrey Edwards, an expert retained by Fireman's, on the basis that Edwards' testimony went to the ultimate issue and that his causation testimony was "speculative" and "unreliable." Defendants

3

simultaneously filed a motion for summary judgment on Fireman's remaining gross negligence claim, asserting that without Edwards' testimony, no genuine issue of material fact remained as to causation. Following a hearing, the trial court granted both motions in a detailed, 13-page order. Fireman's now appeals, contending that the trial court erred in excluding the testimony of its expert, Jeffrey Edwards, and in granting summary judgment to Defendants.[1]

1. In related enumerations of error, Fireman's asserts that the trial court erred in (1) excluding the entirety of Edwards' testimony as unreliable under OCGA § 24-7-702; and (2) excluding as an impermissible legal conclusion Edwards' opinion that the actions of the McKenney's employee in locking open the air damper constituted a failure to exercise reasonable care. We begin with a summary of the testimony from both Fireman's' expert and Defendants' expert.

*Testimony of Fireman's' Expert*

---

[1] According to the notice of appeal, Fireman's also appeals from the trial court's August 9, 2019 order granting summary judgment to Defendants on all of Fireman's claims apart from gross negligence as well as a March 10, 2020 order precluding Fireman's from recovering consequential damages. However, Fireman's brief only addresses the February 4, 2020 order and makes no argument with regard to the other two orders. Accordingly, we express no opinion as to the August 9, 2019 order and March 10, 2020 order.

In his deposition, Edwards, testified that he was a professional engineer licensed in multiple states, including Georgia, and owned a forensic consulting company focusing on mechanical engineering. Edwards testified that he inspected RTU 2-1 on January 27, 2016, days after the incident, and visited the property a total of three times. Based on his review of data from the two units, Edwards testified that both the chilled water valve and the steam valve should have stayed open during freeze protection mode, but that the valves closed for around 12 hours on January 24. Edwards also indicated that the outside air damper, which had been locked open, should have been closed during freeze protection mode. He testified that hypothetically if the outside air damper had been closed, "it's possible [the freeze still would have occurred]. It would be less likely for it to occur if there had not been a continuous stream of cold air into this unit [from the open air damper]." According to Edwards, "[t]here are a lot of different ingredients to the causation of this leak," including the closing of the chilled water valve and steam valve. When pressed, Edwards stated, "I see there being four significant contributing factors to this freeze: cold temperatures outside, closed chilled water valve, closed steam valve, open outside air damper[ ]," but "the primary cause of this freeze failure is water in a cold environment."

In opposition to Defendants' motion for summary judgment, Fireman's submitted an affidavit from Edwards, in which he averred that it was his "opinion within a reasonable degree of engineering certainty that . . . locking open the outside air damper was the cause of the coil freeze and water damage from RTU 2-1[.]" Edwards based his opinion on the following:

> Despite the exposure of RTU 2-2 to the same freezing weather, and despite substantially similar failures of the steam valve and cooling valve[ ] to open completely to follow the freeze protection procedure . . . no splits developed in the metal coils, and no water flowed from RTU 2-2. . . . Deposition testimony of McKenney's Senior Project Manager . . . indicates that other than unlocking the outside air damper of RTU 2-1, no other changes were made to RTU 2-1 or RTU 2-2 after this incident. Although there have been subsequent extended periods of cold outdoor temperatures, there have been no further occurrences of coil ruptures or water leaks from either RTU. . . . The evidence in this case shows that when the outside air dampers are allowed to modulate as originally installed, both RTU 2-1 and RTU 2-2 can endure extended periods of freezing outdoor temperatures, regardless of whether or not the steam valve or cooling valve operate in accordance with the specified freeze protection control sequence.

Edwards also averred that the actions of the McKenney's employee "in locking open the outside air damper constitute a failure to exercise the level of reasonable care

6

which would be expected of an experienced HVAC contractor, or even the simple level of common sense and slight diligence that a reasonable person would use to protect his own property."

*Testimony of Defendants' Expert*

Defendants retained Gregory Schober — a mechanical forensic engineer and professional engineer licensed in the majority of the country, including Georgia — to conduct a forensic analysis into the cause of the water loss incident. Schober never personally inspected the unit, but reviewed the same data as Fireman's' expert.[2] He testified that the "overarching problem" was the failure of the "steam system" as well as the chilled water valve, and that the outside air damper being locked open was a contributing factor. Schober disagreed with Edwards' causation conclusion and

---

[2] Schober testified that the data at issue is "building automation system trend data for the subject RTU 2-1 and RTU 2-2 for the period roughly surrounding the loss" and "came from the Schneider control system," apparently referring to the computerized building management system which controlled the two units. The data consists of a set of values in 15-minute increments, including the steam valve value, which indicates the percentage the steam valve is open, and the cooling valve value, which indicates the percentage the cool water valve is open. Schober also testified that portions of the data seemed inaccurate, "confused," and "inconsistent," and that the data may have been "consolidated," meaning it did not come straight from the system.

testified that if the rest of the freeze protection mode had worked properly, the open outside air damper would not have been an issue.

(a) The admissibility of expert testimony is governed by OCGA § 24-7-702, which pertinently provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:
> (1) The testimony is based upon sufficient facts or data;
> (2) The testimony is the product of reliable principles and methods; and
> (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

OCGA § 24-7-702 (b) (1)-(3). This Code section "requires that the trial court act as gatekeeper to ensure the relevance and reliability of expert testimony." (Citation and punctuation omitted.) *Cash v. LG Electronics*, 342 Ga. App. 735, 736 (1) (804 SE2d 713) (2017). "In this role, the trial court assesses both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." (Citation and punctuation omitted.) *Emory Univ. v. Willcox*, 355 Ga. App. 542, 543 (1) (844 SE2d 889) (2020). We review a trial court's determination under OCGA § 24-7-702 for an abuse of discretion. See *Cash*, 342 Ga.

App. at 736 (1). Finally, the party seeking to rely on the expert bears the burden of establishing that his testimony is reliable within the meaning of the statute. See *Vineyard Indus. v. Bailey*, 343 Ga. App. 517, 522 (2) (b) (806 SE2d 898) (2017).

In its order, the trial court noted that the "issue in the present case is reliability as there is no dispute about qualifications or relevance." On this issue, the court found that Edwards' causation opinion "is not scientifically sound." Specifically,

> Edwards['] causation opinion relies on the two RTU units experiencing similar conditions, except the air damper locked open on the RTU 2-1 unit that flooded the building. . . . The data relied upon by both experts demonstrates the units experienced significantly different conditions, calling into question Mr. Edwards' conclusion that it must have been the open air damper that caused the flood. . . . Defendants pointed out evidence in the trend data that while RTU 2-1 had a total failure of the steam and chilled water valve to open for a pertinent twelve hour period, the same failures did not exist for RTU 2-2. . . . Mr. Edwards' failure to reasonably rule out other causes for the flood in the present case — i.e., the failure of the steam and chilled water val[v]es — renders his opinion unreliable and excludable.

We find two main issues with the trial court's conclusions.

First, the trial court's finding that "while RTU 2-1 had a total failure of the steam and chilled water valve to open for a pertinent twelve hour period, the same

9

failures did not exist for RTU 2-2" is not supported by the evidence. Specifically, the data shows that the chilled water valves on *both units* remained completely closed for the entire 12-hour window at issue.[3] As to the steam valve, the data shows that RTU 2-2's steam valve modulated between open and closed during the 12-hour period, including a period of 1.5 hours completely closed. While RTU 2-1's steam valve remained closed for the entire 12 hours, we nonetheless do not agree that the data shows that the two units "experienced significantly different conditions, calling into question Mr. Edwards' conclusion."[4]

Second, in assessing the admissibility of an expert opinion, "the trial court may not exclude an otherwise sufficient expert opinion simply because it believes that the opinion is not — in its view — particularly strong or persuasive. The weight to be given to admissible expert testimony is a matter for the jury." (Citation and

---

[3] As it did below, Fireman's argues that the trend data is "unreliable" and "inadmissible hearsay." Like the trial court, we find this argument odd given that Fireman's' own expert relies on the data. Moreover, an expert may rely on inadmissible facts and data such as hearsay in reaching his opinion, if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." OCGA § 24-7-703.

[4] For this reason, we find *Roper v. Kawasaki Heavy Indus.*, 646 Fed. Appx. 706 (11th Cir. 2016) — relied on by the trial court in its order — inapposite.

punctuation omitted.) *Willcox*, 355 Ga. App. at 543 (1). As the Eleventh Circuit has explained,

> it is not the role of the [trial] court to make ultimate conclusions as to the persuasiveness of the proffered evidence. Indeed, . . . a [trial] court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury. Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

(Citation and punctuation omitted.) *Quiet Tech. DC-8 v. Hurel-Dubois UK*, 326 F3d 1333, 1341 (II) (A) (11th Cir. 2003). Here, in excluding Edwards' testimony based on its conclusion that the data "call[ed] into question [Edwards'] conclusion" on the issue of causation, the trial court improperly excluded an otherwise sufficient expert opinion based on its belief that the opinion was not particularly strong or persuasive. Essentially, the trial court weighed the conflicting testimony of the two experts, found the opinion of Defendants' expert more persuasive, and accordingly excluded the opinion of Fireman's' expert.[5] "In the face of conflicting expert testimony, it [i]s the

---

[5] The trial court also pointed out in its order that Edwards "failed to properly rule in or out any cause of the accident" in his deposition, but in his second affidavit "identified . . . [the] act of locking the air damper open as the definitive cause of the water loss event." Defendants asserted below that this made Edwards' testimony

11

province of the jury to decide which expert, if either, to credit." *Delson v. Ga. Dept. of Transp.*, 295 Ga. App. 84, 86 (1) (a) (671 SE2d 190) (2008). See also *Wilson v. Redmond Constr.*, 359 Ga. App. 814, 822 (4) (860 SE2d 118) (2021) ("any contentions that the [plaintiffs'] expert misread [the defendant's] expert's report and drew erroneous conclusions go to the weight, rather than the admissibility of the evidence"). Accordingly, the trial court abused its discretion in excluding Edwards' testimony on this basis.

(b) Having concluded that the trial court erred in excluding the entirety of Edwards' testimony on the basis of reliability, we now turn to whether the court erred in excluding Edwards' conclusion that the McKenney's employee's act of locking open the outside air damper "constitute[d] a failure to exercise the level of reasonable care which would be expected of an experienced HVAC contractor, or even the

---

"unreliable," seemingly arguing that the change or conflict in Edwards' testimony should be considered in ruling on its admissibility. To the extent Edwards' deposition testimony conflicts with his affidavit, "that conflict is for the jury to resolve." *Swint v. Alphonse*, 348 Ga. App. 199, 205 (1) (820 SE2d 312) (2018) (explaining that self-contradictory testimony rule is not applicable to an expert witness and that the jury must resolve such issues). Accord *Naik v. Booker*, 303 Ga. App. 282, 286 (692 SE2d 855) (2010) ("[c]ontradictions go solely to the expert's credibility, and are to be assessed by the jury when weighing the expert's testimony") (citation and punctuation omitted).

12

simple level of common sense and slight diligence that a reasonable person would use to protect his own property." An expert witness' "testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact." OCGA § 24-7-704 (a). See also *Hadden v. ARE Properties*, 280 Ga. App. 314, 316 (1) (633 SE2d 667) (2006) (physical precedent only) ("[e]xpert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves") (citation and punctuation omitted). However, "[a]n expert witness may not testify as to his opinion regarding ultimate legal conclusions, but may testify to an ultimate issue of fact." (Citation and punctuation omitted.) *Clayton County v. Segrest*, 333 Ga. App. 85, 91 (2) (c), n.6 (775 SE2d 579) (2015) (physical precedent only).

Here, the trial court excluded Edwards' conclusion that the McKenney's employee's "action of locking the air damper open 'constitute[d] a failure to exercise the level of reasonable care which would be expected of an experienced HVAC contractor, or even the simple level of common sense and slight diligence that a reasonable person would use to protect his own property'" as an inadmissible legal conclusion. We agree and find no error in the trial court's exclusion of this specific

13

portion of Edwards' testimony. See, e.g., *Pacinelli v. Carnival Corp.*, Case No. 18-22731-CIV, 2019 WL 3252133, at *5 (III) (C) (S.D. Fla. July 19, 2019) (expert's testimony that there was a "'failure to exercise reasonable care under the circumstances to properly protect the safety of passengers on the voyage'" was an impermissible legal conclusion) (punctuation omitted); *Barnext Offshore v. Ferretti Group USA*, No. 10-23869-CIV, 2012 WL 13012778, at *14 (II) (2) (E) (S.D. Fla. May 24, 2012) ("whether any action or inaction . . . 'amounts to a failure to exercise reasonable care' is a conclusion of law, about which [expert] may not opine").

2. Fireman's also contends that the trial court erred in granting summary judgment to Defendants on its gross negligence claim. The trial court concluded in its order that "[w]ithout Mr. Edwards' opinion, [Fireman's] has offered no evidence to rebut [Defendants' evidence that the closing of the steam and chilled water valves led to the water loss] and for a jury to conclude whether [the McKenney's employee's] action of locking the air damper open caused the subject property loss."

"Issues of negligence and causation generally are not appropriate for summary adjudication unless the evidence is plain, palpable, and undisputable." (Citation and punctuation omitted.) *Holcomb Investments v. Keith Hardware*, 354 Ga. App. 270, 275 (2) (840 SE2d 646) (2020). And, "even *slight* evidence will be sufficient to

14

satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment[.]" (Citation and punctuation omitted; emphasis in original.) Id. In response to Defendants' motion for summary judgment, Fireman's put forth Edwards' affidavit in which he averred that locking open the outside air damper caused the water loss in this case. Given our holding above allowing this testimony, it follows that the trial court erred in granting summary judgment in favor of Defendants on the issue of causation. See, e.g., *Woodrum v. Ga. Farm Bureau Mut. Ins. Co.*, 347 Ga. App. 89, 94 (2) (815 SE2d 650) (2018) (physical precedent only).

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Reese, J., concur.*